Carole ZICKLIN, Plaintiff,

v.

G. W. BREUER, et al., Defendants.

No. 81 Civ. 3387.

United States District Court,
S. D. New York.

March 24, 1982.

Milberg, Weiss, Bershad, & Specthrie, New York City, for plaintiff Carole Zicklin and proposed intervenors Sydney Weston, Dana Winslow, Dr. Sanford Rollins and Lois Rollins, Scott Dale Rollins, John Fairchild and Joseph Davis; Richard M. Meyer, New York City, of counsel.

Mordecai Rosenfeld, New York City, for plaintiff Harry August.

Avrom S. Fischer, Brooklyn, N.Y., for plaintiff Stanley Sanders.

Kreindler & Kreindler, New York City, for plaintiff Margaret Wendy; Paul M. Bernstein, New York City, of counsel.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff Irving Zeizel and proposed intervenor Phyllis Zeizel; Marion Probst, New York City, of counsel.

Stull, Stull & Brody, New York City, for plaintiff Miriam Soshtain, et al.; Jules Brody, New York City, of counsel.

White & Case, New York City, for defendant.

## OPINION AND ORDER

OWEN, District Judge.

Defendant Bankers Trust Corporation ("Bankers Trust") moved to dismiss plaintiff's Rule 10b–5 claims pursuant to Rules 9(b) and 12(b)(6), and for summary judgment and statutory costs as to plaintiff's Section 11 claims pursuant to Rule 56(b). For the reasons set forth below, I dismiss plaintiff's Rule 10b–5 claim against Bankers Trust, grant Bankers Trust's motion for summary judgment on plaintiff's Section 11 claim, and deny Bankers Trust's motion for costs.

Plaintiff, together with the plaintiffs in five other related cases, moved to consolidate their cases pursuant to Rule 42(a) and to allow certain named individuals to intervene in the consolidated action as parties plaintiff pursuant to Rule 24(b)(2). For the reasons set forth below, I grant these motions.

## I. *The Bankers Trust Motions*

In broad outline, the facts are as follows. Basic Earth Science Systems, Inc. ("BESS"), the name defendant, is a petroleum engineering company. In December, 1980, BESS sold securities to the public pursuant to a registration statement dated December 18, 1980. The prospectus which accompanied that registration statement valued BESS's proven oil and gas reserves as of September 30, 1980 at $132,682,000. It was signed by BESS and by certain underwriters, including John Muir & Co. which acted as the principal and managing

underwriter. Bankers Trust did not prepare or sign the December Prospectus. Bankers Trust, acting for its customers, did however purchase a substantial number of shares from John Muir & Co.

In June 1981, BESS issued a press release announcing that the present value of its oil and gas reserves was less than 50% of the amount it had stated in its December Prospectus. This lawsuit followed. Plaintiff has alleged that a variety of defendants, including Bankers Trust, violated Section 11 and Rule 10b–5 during the course of the transaction detailed above. Specifically, plaintiff alleges that Bankers Trust is liable as a statutory underwriter for the material errors in the prospectus and is liable in fraud for its participation in the entire transaction.

### A. Plaintiff's Section 11 Claims

■ Section 11 provides a civil remedy for purchasers of securities against "every underwriter with respect to such security" where "any part of the registration statement . . . contained an untrue statement of a material fact or omitted to state a material fact required to be stated." 15 U.S.C. § 77k(a). Section 2(11) defines an underwriter as

> any person who has purchased from an issuer with a view to, or offers or sells for an issuer·in connection with, the distribution of any security or participates or has a direct or indirect participation in any such undertaking, or participates·or has a participation in the direct or indirect underwriting of any such·undertaking . . . .

15 U.S.C. § 77b.

Therefore, in order for this action to survive summary judgment, plaintiff must demonstrate that there is at least a factual dispute as to whether Bankers Trust is a statutory underwriter. I conclude that plaintiff has failed to meet even that burden.

In capsule, plaintiff contends that Bankers Trust fits within the Section 2(11) definition because Bankers Trust purchased a significant number of BESS shares on the offering, acted as an important link in the chain of distribution, and issued reports touting BESS shares to its customers at the time that it was buying and selling securities for its customers' accounts. As a matter of law, however, these contentions taken together do not make out a Section 11 violation.

From my review of the uncontested facts, Bankers Trust was merely acting in a manner characteristic of the practices of the so-called "trusts and estates" department of any commercial bank. Barred as commercial banks are from owning stock or acting as underwriters, see Glass-Steagell Act, 12 U.S.C. §§ 224, 335, Bankers Trust permissibly serves as the account manager for certain of its customers on the investment advisory accounts they maintain at the bank. As a part of that service, Bankers Trust issues reports describing and recommending certain securities, such as the BESS offering, and buys and sells shares for their accounts. Bankers Trust maintains a relationship with its customers; in no manner did it have a relationship with BESS, John Muir & Co., or the underwriting itself. Plaintiff, therefore, must properly plead some greater nexus between the investment management department of Bankers Trust and this underwriting of securities before such liability can attach. Otherwise, all commercial banks could potentially be the hostage of well-pleaded Section 11 complaints and speculative and inferential affidavits.

One New York court has taken a similar view, holding:

> the participation of the bank in the entire transaction was tangential—that of an uncompensated, unsoliciting broker acting as an accommodation for its depositors in the purchase of securities. . . . In no way was it cooperating with the underwriter or participating in the matter of distribution; it merely took from an underwriter what the latter was prepared to sell . . . . And, [even] assuming the bank was in other respects an underwriter, those underwriters "whose interest is limited to a commission from an underwriter or dealer not in excess of the usual or customary distributors' or sellers' com-

mission," are excluded from the definition by the same section. The bank was receiving compensation from nobody; nor was the bank engaged in "public distribution" of the stock on the behalf of anyone. So far as the chain of distribution is concerned the bank was in the position of the consumer.

*Hyman v. Gregory & Sons*, 44 Misc.2d 102, 252 N.Y.S.2d 919, 925–26 (Sup.Ct.N.Y.Co. 1964). I agree. It would indeed be anomalous if the bank were to be held liable under Section 11 where it had no formal relationship with the offeror or the underwriting and where it acted in a manner which both the statute itself [1] and the regulations [2] specifically exclude from liability.

### B. *Plaintiff's Rule 10b–5 Claim as to Bankers Trust is Dismissed Pursuant to Rule 9(b), Fed.R.Civ.P.*

 Rule 9(b) requires that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Apart from its general averments as to all defendants, plaintiff addresses Bankers Trust's alleged fraudulent activity in only one paragraph of her complaint. There plaintiff avers that Bankers Trust purchased BESS securities with a view to distribution, that Bankers Trust at the same time prepared and disseminated a report touting the securities, and that Bankers Trust subsequently resold some of the shares it purchased. Nowhere does plaintiff allege actionable scienter nor does plaintiff identify any fraudulent misrepresentations made by Bankers Trust or even allege facts from which one could draw an inference of fraud. Finally, even the allegations which plaintiff does make are made only upon information and belief

and a Rule 9(b) pleading cannot be based upon so insubstantial a foundation. *See Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972).

Rule 9(b) places on plaintiff a special burden.

> In the context of a securities litigation Rule 9(b) serves an additional important purpose. It operates to diminish the possibility that " 'a plaintiff with a largely groundless claim [will be able] to simply take up the time of a number of other people [by extensive discovery], with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence . . . . ' "

*Ross v. A. H. Robins Co.*, 607 F.2d 545, 557 (2d Cir. 1979) (citations omitted). Because plaintiff has not pleaded fraud with sufficient particularity, because plaintiff's failure to allege scienter makes her complaint deficient as a matter of law, Rule 12(b)(6), Fed.R.Civ.P., and because on oral argument plaintiff's counsel did not aver that plaintiff would be able to correct her pleading deficiencies, I dismiss plaintiff's Rule 10b–5 claim with prejudice for failure to comply with Rule 9(b).

Given the foregoing, Bankers Trust's motion for summary judgment is granted and plaintiff's Rule 10b–5 motion is dismissed.

### II. *The Consolidation and Intervention Motions*

 Plaintiff Zicklin's action is the first of a series of six actions which have been filed to date charging securities act violations by BESS and certain other defendants. All of these actions focus, in large

---

**1.** Section 2(11) excludes from liability individuals who take compensation from an underwriter or dealer "not in excess of the usual and customary distributors' or sellers' commission." Here Bankers Trust has taken no compensation from anyone on the distribution side of the transaction. I refuse to stretch the definition of "underwriter" to include an uncompensated party where a party receiving limited compensation is in terms excluded by the statutory definition.

**2.** Moreover, Bankers Trust's publication of reports touting BESS securities cannot be taken as proof of their participation in the underwriting. Rule 137, 17 CFR 230.137, specifically excludes from the Section 2(11) definition "the publication or distribution of information, opinions, or recommendations . . . [where] such information is published in the regular course of business by a dealer . . . or such dealer receives no compensation directly or indirectly . . . from the issuer."

part, upon allegedly false and misleading statements and omissions in the BESS prospectus and registration statement which became effective on December 18, 1980. Pursuant to Rule 42(a), it is within the Court's power to consolidate actions which share "common questions of law or fact." These cases clearly have many common issues. I therefore grant plaintiff's motion for a consolidation.

Rule 24(b)(1) invests me with the discretion to allow the intervention of an applicant where the applicant's claim and the main action "have a question of law or fact in common." Upon the representation of movants in Richard M. Meyer's affidavit, the proposed intervenors in this action share such common concerns. I therefore grant the motion to intervene.

The foregoing is so ordered.