# HERMAN & MacLEAN *v.* HUDDLESTON ET AL.

No. 81–680.   Argued November 9, 1982—Decided January 24, 1983*

---

*Together with No. 81–1076, *Huddleston et al.* v. *Herman & MacLean et al.*, also on certiorari to the same court.

MARSHALL, J., delivered the opinion of the Court, in which all other Members joined, except POWELL, J., who took no part in the decision of the cases.

*James L. Truitt* argued the cause for Herman & MacLean. With him on the briefs was *Jack Pew, Jr.*

*Robert H. Jaffe* argued the cause for respondents in No. 81–680 and petitioners in No. 81–1076. With him on the brief were *Myer Feldman, Jonathan M. Weisgall, Robert L. Deitz,* and *David S. Komiss.*

*Paul Gonson* argued the cause for the Securities and Exchange Commission as *amicus curiae.* With him on the brief urging affirmance in part and reversal in part were *Solicitor General Lee, Deputy Solicitor General Shapiro, Jacob H. Stillman,* and *Richard A. Kirby.*†

JUSTICE MARSHALL delivered the opinion of the Court.

These consolidated cases raise two unresolved questions concerning § 10(b) of the Securities Exchange Act of 1934 (1934 Act), 48 Stat. 891, 15 U. S. C. § 78j(b). The first is whether purchasers of registered securities who allege they were defrauded by misrepresentations in a registration statement may maintain an action under § 10(b) notwithstanding the express remedy for misstatements and omissions in registration statements provided by § 11 of the Securities Act of 1933 (1933 Act), 48 Stat. 82, as amended, 15 U. S. C. § 77k. The second question is whether persons seeking recovery under § 10(b) must prove their cause of action by clear and convincing evidence rather than by a preponderance of the evidence.

I

In 1969 Texas International Speedway, Inc. (TIS), filed a registration statement and prospectus with the Securities and Exchange Commission offering a total of $4,398,900 in securities to the public. The proceeds of the sale were to be used to finance the construction of an automobile speedway. The entire issue was sold on the offering date, October 30, 1969. TIS did not meet with success, however, and the corporation filed a petition for bankruptcy on November 30, 1970.

---

†*William E. Hegarty, Victor M. Earle III*, and *Joseph W. Muccia* filed a brief for Peat, Marwick, Mitchell & Co. as *amicus curiae* urging reversal.

Briefs of *amici curiae* were filed by *Edward J. Ross* and *Charles W. Boand* for Arthur Anderson & Co.; and by *John L. Warden, Philip K. Howard,* and *William J. Fitzpatrick* for the Securities Industry Association.

In 1972 plaintiffs Huddleston and Bradley instituted a class action in the United States District Court for the Southern District of Texas[1] on behalf of themselves and other purchasers of TIS securities. The complaint alleged violations of § 10(b) of the 1934 Act and SEC Rule 10b–5 promulgated thereunder, 17 CFR § 240.10b–5 (1982).[2] Plaintiffs sued most of the participants in the offering, including the accounting firm, Herman & MacLean, which had issued an opinion concerning certain financial statements and a *pro forma* balance sheet[3] that were contained in the registration statement and prospectus. Plaintiffs claimed that the defendants had engaged in a fraudulent scheme to misrepresent or conceal material facts regarding the financial condition of TIS, including the costs incurred in building the speedway.

After a 3-week trial, the District Judge submitted the case to the jury on special interrogatories relating to liability. The judge instructed the jury that liability could be found only if the defendants acted with scienter.[4] The judge also instructed the jury to determine whether plaintiffs had proved their cause of action by a preponderance of the evi-

---

[1] The case was transferred to the United States District Court for the Northern District of Texas in January 1973.

[2] Plaintiffs also alleged violations of, *inter alia*, § 17(a) of the 1933 Act, 15 U. S. C. § 77q(a). We have previously reserved decision on whether § 17(a) affords a private remedy, *Teamsters* v. *Daniel*, 439 U. S. 551, 557, n. 9 (1979), and we do so once again. Plaintiffs have abandoned their § 17(a) claim, Brief for Respondents in No. 81–680, p. 4, n. 6, and the Court of Appeals did not address the existence of a separate cause of action under § 17(a). Accordingly, there is no need for us to decide the issue.

[3] A *pro forma* balance sheet is one prepared on the basis of assumptions as to future events.

[4] The judge stated that reckless behavior could satisfy the scienter requirement. While this instruction reflects the prevailing view of the Courts of Appeals that have addressed the issue, see *McLean* v. *Alexander*, 599 F. 2d 1190, 1197, and n. 12 (CA3 1979) (collecting cases), we have explicitly left open the question whether recklessness satisfies the scienter requirement. *Ernst & Ernst* v. *Hochfelder*, 425 U. S. 185, 194, n. 12 (1976).

dence. After the jury rendered a verdict in favor of the plaintiffs on the submitted issues, the judge concluded that Herman & MacLean and others had violated § 10(b) and Rule 10b–5 by making fraudulent misrepresentations in the TIS registration statement.[5] The court then determined the amount of damages and entered judgment for the plaintiffs.

On appeal, the United States Court of Appeals for the Fifth Circuit held that a cause of action may be maintained under § 10(b) of the 1934 Act for fraudulent misrepresentations and omissions even when that conduct might also be actionable under § 11 of the 1933 Act. 640 F. 2d 534, 540–543 (1981). However, the Court of Appeals disagreed with the District Court as to the appropriate standard of proof for an action under § 10(b), concluding that a plaintiff must prove his case by "clear and convincing" evidence. Id., at 545–546. The Court of Appeals reversed the District Court's judgment on other grounds and remanded the case for a new trial. Id., at 547–550, 560.

We granted certiorari to consider whether an implied cause of action under § 10(b) of the 1934 Act will lie for conduct subject to an express civil remedy under the 1933 Act, an issue we have previously reserved,[6] and to decide the standard of proof applicable to actions under § 10(b).[7] 456 U. S. 914

---

[5] The trial court also found that Herman & MacLean had aided and abetted violations of § 10(b). While several Courts of Appeals have permitted aider-and-abettor liability, see *IIT, An International Investment Trust* v. *Cornfeld*, 619 F. 2d 909, 922 (CA2 1980) (collecting cases), we specifically reserved this issue in *Ernst & Ernst* v. *Hochfelder, supra,* at 191–192, n. 7. Cf. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Curran,* 456 U. S. 353, 394 (1982) (discussing liability for participants in a conspiracy under analogous Commodity Exchange Act provision).

[6] See, *e. g., Blue Chip Stamps* v. *Manor Drug Stores,* 421 U. S. 723, 752, n. 15 (1975).

[7] The Fifth Circuit's adoption of a clear-and-convincing-evidence standard in a private action under § 10(b) appears to be unprecedented. See 3 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 98.04, p. 930 (3d ed., 1981 Cum. Supp.). Other courts have employed a preponderance-of-the-evidence standard in private actions under the securities

(1982). We now affirm the Court of Appeals' holding that plaintiffs could maintain an action under § 10(b) of the 1934 Act, but we reverse as to the applicable standard of proof.

## II

The Securities Act of 1933 and the 1934 Act "constitute interrelated components of the federal regulatory scheme governing transactions in securities." *Ernst & Ernst* v. *Hochfelder*, 425 U. S. 185, 206 (1976). The Acts created several express private rights of action,[8] one of which is contained in § 11 of the 1933 Act. In addition to the private actions created explicitly by the 1933 and 1934 Acts, federal courts have implied private remedies under other provisions of the two laws.[9] Most significantly for present purposes, a private right of action under § 10(b) of the 1934 Act and Rule 10b–5 has been consistently recognized for more than 35 years.[10] The existence of this implied remedy is simply beyond peradventure.

laws. See, *e. g.*, *Mihara* v. *Dean Witter & Co.*, 619 F. 2d 814, 824–825 (CA9 1980); *Dzenits* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F. 2d 168, 171, n. 2 (CA10 1974); *Globus* v. *Law Research Service, Inc.*, 418 F. 2d 1276, 1291 (CA2 1969), cert. denied, 397 U. S. 913 (1970); *Franklin Life Insurance Co.* v. *Commonwealth Edison Co.*, 451 F. Supp. 602, 607 (SD Ill. 1978), aff'd *per curiam*, 598 F. 2d 1109 (CA7), cert. denied, 444 U. S. 900 (1979).

[8] 1933 Act, §§ 11, 12, 15, 15 U. S. C. §§ 77k, 77*l*, 77o; 1934 Act, §§ 9, 16, 18, 15 U. S. C. §§ 78i, 78p, 78r.

[9] See, *e. g.*, *J. I. Case Co.* v. *Borak*, 377 U. S. 426 (1964) (§ 14(a) of 1934 Act); *Dan River, Inc.* v. *Unitex Ltd.*, 624 F. 2d 1216 (CA4 1980) (§ 13 of 1934 Act), cert. denied, 449 U. S. 1101 (1981); *Kirshner* v. *United States*, 603 F. 2d 234, 241 (CA2 1978) (§ 17(a) of 1934 Act), cert. denied, 442 U. S. 909 (1979). But see, *e. g.*, *Touche Ross & Co.* v. *Redington*, 442 U. S. 560 (1979) (no implied private right of action under § 17(a) of 1934 Act); *Piper* v. *Chris-Craft Industries, Inc.*, 430 U. S. 1 (1977) (defeated tender offeror has no implied private right of action under § 14(e) of 1934 Act).

[10] The right of action was first recognized in *Kardon* v. *National Gypsum Co.*, 69 F. Supp. 512 (ED Pa. 1946). By 1961, four Courts of Appeals

The issue in this case is whether a party should be barred from invoking this established remedy for fraud because the allegedly fraudulent conduct would apparently also provide the basis for a damages action under § 11 of the 1933 Act.[11] The resolution of this issue turns on the fact that the two provisions involve distinct causes of action and were intended to address different types of wrongdoing.

Section 11 of the 1933 Act allows purchasers of a registered security to sue certain enumerated parties in a registered offering when false or misleading information is included in a registration statement. The section was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability[12] on the parties who

---

and several District Courts in other Circuits had recognized the existence of a private remedy under § 10(b) and Rule 10b–5, and only one District Court decision had reached a contrary conclusion. See 3 L. Loss, Securities Regulation 1763–1764, and nn. 260–263 (2d ed. 1961) (collecting cases). By 1969, the existence of a private cause of action had been recognized by 10 of the 11 Courts of Appeals. See 6 *id.*, at 3871–3873 (Supp. 1969) (collecting cases). When the question whether an implied cause of action can be brought under § 10(b) and Rule 10b–5 was first considered in this Court, we confirmed the existence of such a cause of action without extended discussion. See *Superintendent of Insurance* v. *Bankers Life & Cas. Co.*, 404 U. S. 6, 13, n. 9 (1971). We have since repeatedly reaffirmed that "the existence of a private cause of action for violations of the statute and the Rule is now well established." *Ernst & Ernst* v. *Hochfelder*, 425 U. S., at 196 (citing prior cases).

[11] The Court of Appeals noted that the plaintiffs "apparently did have a Section 11 remedy." 640 F. 2d 534, 541, n. 5 (1981). While accurate as to the two other defendants, this conclusion may be open to question with respect to Herman & MacLean. Accountants are liable under § 11 only for those matters which purport to have been prepared or certified by them. 15 U. S. C. § 77k(a)(4). Herman & MacLean contends that it did not "expertise" at least some of the materials that were the subject of the lawsuit, Tr. of Oral Arg. 6–8, which if true could preclude a § 11 remedy with respect to these materials.

[12] See H. R. Rep. No. 85, 73d Cong., 1st Sess., 9 (1933) (Section 11 creates "correspondingly heavier legal liability" in line with responsibility to the public).

play a direct role in a registered offering.[13]   If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case.   Liability against the issuer of a security is virtually absolute,[14] even for innocent misstatements.   Other defendants bear the burden of demonstrating due diligence.   See 15 U. S. C. § 77k(b).

Although limited in scope, § 11 places a relatively minimal burden on a plaintiff.   In contrast, § 10(b) is a "catchall" antifraud provision,[15] but it requires a plaintiff to carry a heavier burden to establish a cause of action.   While a § 11 action must be brought by a purchaser of a registered security, must be based on misstatements or omissions in a registration statement, and can only be brought against certain parties, a § 10(b) action can be brought by a purchaser or seller of "*any* security" against "*any* person" who has used "*any* manipulative or deceptive device or contrivance" in connection with the purchase or sale of a security.   15 U. S. C. § 78j (emphasis added).   However, a § 10(b) plaintiff carries a heavier burden than a § 11 plaintiff.   Most significantly, he must prove that the defendant acted with scienter, *i. e.*, with intent to deceive, manipulate, or defraud.[16]

Since § 11 and § 10(b) address different types of wrongdoing, we see no reason to carve out an exception to § 10(b) for fraud occurring in a registration statement just because the

---

[13] A § 11 action can be brought only against certain parties such as the issuer, its directors or partners, underwriters, and accountants who are named as having prepared or certified the registration statement.   See 15 U. S. C. § 77k(a).   At the same time, §§ 3 and 4 of the 1933 Act exclude a wide variety of securities (such as those issued by the Government and certain banks) and transactions (such as private ones and certain small offerings) from the registration requirement.   15 U. S. C. §§ 77c and 77d.

[14] See *Feit* v. *Leasco Data Processing Equipment Corp.*, 332 F. Supp. 544, 575 (EDNY 1971); R. Jennings & H. Marsh, Securities Regulation 828–829 (4th ed. 1977).

[15] See *Chiarella* v. *United States*, 445 U. S. 222, 234–235 (1980).

[16] See *Ernst & Ernst* v. *Hochfelder, supra*, at 193.

same conduct may also be actionable under § 11.[17]  Exempting such conduct from liability under § 10(b) would conflict with the basic purpose of the 1933 Act: to provide greater protection to purchasers of registered securities.  It would be anomalous indeed if the special protection afforded to purchasers in a registered offering by the 1933 Act were deemed to deprive such purchasers of the protections against manipulation and deception that § 10(b) makes available to all persons who deal in securities.

While some conduct actionable under § 11 may also be actionable under § 10(b), it is hardly a novel proposition that the 1934 Act and the 1933 Act "prohibit some of the same conduct." *United States* v. *Naftalin,* 441 U. S. 768, 778 (1979) (applying § 17(a) of the 1933 Act to conduct also prohibited by § 10(b) of the 1934 Act in an action by the SEC).  "'The fact that there may well be some overlap is neither unusual nor unfortunate.'" *Ibid.,* quoting *SEC* v. *National Securities, Inc.,* 393 U. S. 453, 468 (1969).  In saving clauses included in the 1933 and 1934 Acts, Congress rejected the notion that the express remedies of the securities laws would pre-empt all other rights of action.  Section 16 of the 1933 Act states unequivocally that "[t]he rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity."  15 U. S. C. § 77p.  Section 28(a) of the 1934 Act contains a parallel provision.  15 U. S. C. § 78bb(a).  These provisions confirm that the remedies in each Act were to be supplemented by "any and all" additional remedies.

This conclusion is reinforced by our reasoning in *Ernst & Ernst* v. *Hochfelder,* which held that actions under § 10(b) require proof of scienter and do not encompass negligent conduct.  In so holding, we noted that each of the express civil

---

[17] Cf. *Mills* v. *Electric Auto-Lite Co.,* 396 U. S. 375, 390–391 (1970) (existence of express provisions for recovery of attorney's fees in §§ 9(e) and 18(a) of 1934 Act does not preclude award of attorney's fees under § 14(a) of Act).

remedies in the 1933 Act allowing recovery for negligent conduct is subject to procedural restrictions not applicable to a § 10(b) action.[18]  425 U. S., at 208–210.  We emphasized that extension of § 10(b) to negligent conduct would have allowed causes of action for negligence under the express remedies to be brought instead under § 10(b), "thereby nullify[ing] the effectiveness of the carefully drawn procedural restrictions on these express actions."  *Id.*, at 210 (footnote omitted).  In reasoning that scienter should be required in § 10(b) actions in order to avoid circumvention of the procedural restrictions surrounding the express remedies, we necessarily assumed that the express remedies were not exclusive.  Otherwise there would have been no danger of nullification.  Conversely, because the added burden of proving scienter attaches to suits under § 10(b), invocation of the § 10(b) remedy will not "nullify" the procedural restrictions that apply to the express remedies.[19]

This cumulative construction of the remedies under the 1933 and 1934 Acts is also supported by the fact that, when Congress comprehensively revised the securities laws in 1975, a consistent line of judicial decisions had permitted plaintiffs to sue under § 10(b) regardless of the availability of express remedies.  In 1975 Congress enacted the "most substantial and significant revision of this country's Federal securities laws since the passage of the Securities Exchange

---

[18] For example, a plaintiff in a § 11 action may be required to post a bond for costs, 15 U. S. C. § 77k(e), and the statute of limitations is only one year, § 77m.  In contrast, § 10(b) contains no provision requiring plaintiffs to post security for costs.  Also, courts look to the most analogous statute of limitations of the forum State, which is usually longer than the period provided for § 11 actions.  See *Ernst & Ernst* v. *Hochfelder*, 425 U. S., at 210, n. 29.

[19] See *Fischman* v. *Raytheon Mfg. Co.*, 188 F. 2d 783, 786–787 (CA2 1951); 1 A. Bromberg & L. Lowenfels, Securities Fraud & Commodities Fraud § 2.4(403), pp. 2:179–2:180 (1982).

Act in 1934." [20]    See Securities Acts Amendments of 1975, Pub. L. 94–29, 89 Stat. 97.    When Congress acted, federal courts had consistently and routinely permitted a plaintiff to proceed under § 10(b) even where express remedies under § 11 or other provisions were available. [21]    In light of this

[20] Securities Acts Amendments of 1975: Hearings on S. 249 before the Subcommittee on Securities of the Senate Committee on Banking, Housing and Urban Affairs, 94th Cong., 1st Sess., 1 (1975).    As the Conference Report on the legislation explained, the 1975 Amendments were the culmination of "the most searching reexamination of the competitive, statutory, and economic issues facing the securities markets, the securities industry, and, of course, public investors, since the 1930's."    H. R. Conf. Rep. No. 94–229, p. 91 (1975).

[21] See, *e. g., Schaefer* v. *First National Bank of Lincolnwood,* 509 F. 2d 1287, 1292–1293 (CA7 1975), cert. denied, 425 U. S. 943 (1976); *Wolf* v. *Frank,* 477 F. 2d 467, 475 (CA5), cert. denied, 414 U. S. 975 (1973); *Jordan Bldg. Corp.* v. *Doyle, O'Connor & Co.,* 401 F. 2d 47, 51 (CA7 1968); *Ellis* v. *Carter,* 291 F. 2d 270, 273–274 (CA9 1961); *Fischman* v. *Raytheon Mfg. Co., supra,* at 786–787; *Orn* v. *Eastman Dillon, Union Securities & Co.,* 364 F. Supp. 352, 355 (CD Cal. 1973); *Stewart* v. *Bennett,* 359 F. Supp. 878, 886 (Mass. 1973); *Trussell* v. *United Underwriters, Ltd.,* 228 F. Supp. 757, 765–766 (Colo. 1964).    Cf. *Gilbert* v. *Nixon,* 429 F. 2d 348, 355 (CA10 1970) (recognizing overlapping actions but resolving conflict in favor of express remedy where that remedy is "explicit").    Two early District Court decisions had refused to recognize an action under Rule 10b–5 in the face of overlap with § 11.    *Rosenberg* v. *Globe Aircraft Corp.,* 80 F. Supp. 123 (ED Pa. 1948); *Montague* v. *Electronic Corp. of America,* 76 F. Supp. 933 (SDNY 1948).    The latter case was not subsequently followed in the Southern District, *e. g., Osborne* v. *Mallory,* 86 F. Supp. 869 (SDNY 1949), and it has no precedential value in light of the Second Circuit's decision in *Fischman* v. *Raytheon Mfg. Co., supra.*    The *Rosenberg* decision stood alone at the time of the 1975 Amendments, and even that decision had not been followed in the District in which it was decided, *Premier Industries, Inc.* v. *Delaware Valley Financial Corp.,* 185 F. Supp. 694 (ED Pa. 1960), or elsewhere within the same Circuit, *Dauphin Corp.* v. *Redwall Corp.,* 201 F. Supp. 466 (Del. 1962).    Since the 1975 Amendments, the lower courts have continued to recognize that an implied cause of action under § 10(b) can be brought regardless of whether express remedies are available.    See, *e. g., Berger* v. *Bishop Investment Corp.,* 695 F. 2d 302 (CA8 1982); *Wachovia Bank & Trust Co.* v. *National Student Mar-*

well-established judicial interpretation, Congress' decision to leave § 10(b) intact suggests that Congress ratified the cumulative nature of the § 10(b) action. See *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Curran,* 456 U. S. 353, 381–382 (1982); *Lorillard* v. *Pons,* 434 U. S. 575, 580–581 (1978).

A cumulative construction of the securities laws also furthers their broad remedial purposes. In enacting the 1934 Act, Congress stated that its purpose was "to impose requirements necessary to make [securities] regulation and control reasonably complete and effective." 15 U. S. C. § 78b. In furtherance of that objective, § 10(b) makes it unlawful to use "*any* manipulative or deceptive device or contrivance" in connection with the purchase or sale of any security. The effectiveness of the broad proscription against fraud in § 10(b) would be undermined if its scope were restricted by the existence of an express remedy under § 11.[22] Yet we have repeatedly recognized that securities laws combating fraud should be construed "not technically and

_____

*keting Corp.,* 209 U. S. App. D. C. 9, 21–26, 650 F. 2d 342, 354–359 (1980), cert. denied, 452 U. S. 954 (1981); *Ross* v. *A. H. Robins Co.,* 607 F. 2d 545, 551–556 (CA2 1979), cert. denied, 446 U. S. 946 (1980); *Pearlstein* v. *Justice Mortgage Investors,* [1979] CCH Fed. Sec. L. Rep. ¶ 96,760, pp. 94,973–94,974 (ND Tex. 1978); *In re Clinton Oil Company Securities Litigation,* [1977–1978] CCH Fed. Sec. L. Rep. ¶ 96,015, p. 91,575 (Kan. 1977).

[22] Moreover, certain individuals who play a part in preparing the registration statement generally cannot be reached by a § 11 action. These include corporate officers other than those specified in 15 U. S. C. § 77k(a), lawyers not acting as "experts," and accountants with respect to parts of a registration statement which they are not named as having prepared or certified. If, as Herman & MacLean argues, purchasers in registered offerings were required to rely solely on § 11, they would have no recourse against such individuals even if the excluded parties engaged in fraudulent conduct while participating in the registration statement. The exempted individuals would be immune from federal liability for fraudulent conduct even though § 10(b) extends to "any person" who engages in fraud in connection with a purchase or sale of securities.

restrictively, but flexibly to effectuate [their] remedial purposes." *SEC* v. *Capital Gains Research Bureau, Inc.*, 375 U. S. 180, 195 (1963). Accord, *Superintendent of Insurance* v. *Bankers Life & Cas. Co.*, 404 U. S. 6, 12 (1971); *Affiliated Ute Citizens* v. *United States*, 406 U. S. 128, 151 (1972). We therefore reject an interpretation of the securities laws that displaces an action under § 10(b).[23]

Accordingly, we hold that the availability of an express remedy under § 11 of the 1933 Act does not preclude defrauded purchasers of registered securities from maintaining an action under § 10(b) of the 1934 Act. To this extent the judgment of the Court of Appeals is affirmed.

### III

In a typical civil suit for money damages, plaintiffs must prove their case by a preponderance of the evidence.[24] Similarly, in an action by the SEC to establish fraud under § 17(a) of the 1933 Act, 15 U. S. C. § 77q(a), we have held that proof by a preponderance of the evidence suffices to establish liability. *SEC* v. *C. M. Joiner Leasing Corp.*, 320 U. S. 344, 355 (1943). "Where . . . proof is offered in a civil action, as here, a preponderance of the evidence will establish the case . . . ."

---

[23] We also reject application of the maxim of statutory construction, *expressio unius est exclusio alterius.* See H. Hart & A. Sacks, The Legal Process: Basic Problems in the Making and Application of Law 1173–1174 (tent. ed. 1958); Note, Implying Civil Remedies from Federal Regulatory Statutes, 77 Harv. L. Rev. 285, 290–291 (1963). As we stated in *SEC* v. *C. M. Joiner Leasing Corp.*, 320 U. S. 344, 350–351 (1943), such canons "long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose." See generally *Silver* v. *New York Stock Exchange*, 373 U. S. 341, 357 (1963) (favoring "an analysis which reconciles the operation of both statutory schemes with one another rather than holding one completely ousted"). We believe the maxim cannot properly be applied to a situation where the remedies redress different misconduct and where the remedial purposes of the Acts would be undermined by a presumption of exclusivity.

[24] See *Addington* v. *Texas*, 441 U. S. 418, 423 (1979).

*Ibid.* The same standard applies in administrative proceedings before the SEC[25] and has been consistently employed by the lower courts in private actions under the securities laws.[26]

The Court of Appeals nonetheless held that plaintiffs in a § 10(b) suit must establish their case by clear and convincing evidence. The Court of Appeals relied primarily on the traditional use of a higher burden of proof in civil fraud actions at common law. 640 F. 2d, at 545–546. Reference to common-law practices can be misleading, however, since the historical considerations underlying the imposition of a higher standard of proof have questionable pertinence here.[27]  See *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U. S. 723, 744–745 (1975) ("[T]he typical fact situation in which the classic tort of misrepresentation and deceit evolved was light years away from the world of commercial transactions to which Rule 10b–5 is applicable").  Moreover, the antifraud provisions of the securities laws are not coextensive with

---

[25] See *Steadman* v. *SEC*, 450 U. S. 91 (1981).

[26] See n. 7, *supra*.

[27] A higher standard of proof apparently arose in courts of equity when the chancellor faced claims that were unenforceable at law because of the Statute of Wills, the Statute of Frauds, or the parol evidence rule.  See Note, Appellate Review in the Federal Courts of Findings Requiring More than a Preponderance of the Evidence, 60 Harv. L. Rev. 111, 112 (1946). Concerned that claims would be fabricated, the chancery courts imposed a more demanding standard of proof.  The higher standard subsequently received wide acceptance in equity proceedings to set aside presumptively valid written instruments on account of fraud.  See *United States* v. *American Bell Telephone Co.*, 167 U. S. 224, 240–241 (1897); *Southern Development Co.* v. *Silva*, 125 U. S. 247, 249–250 (1888); *Colorado Coal Co.* v. *United States*, 123 U. S. 307, 316–319 (1887); *Maxwell Land-Grant Case*, 121 U. S. 325, 381 (1887) ("We take the general doctrine to be, that when in a court of equity it is proposed to set aside, to annul or to correct a written instrument for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt").  Such proceedings bear little relationship to modern lawsuits under the federal securities laws.

common-law doctrines of fraud.[28]   Indeed, an important purpose of the federal securities statutes was to rectify perceived deficiencies in the available common-law protections by establishing higher standards of conduct in the securities industry.   See *SEC* v. *Capital Gains Research Bureau, Inc., supra,* at 186.   We therefore find reference to the common law in this instance unavailing.

Where Congress has not prescribed the appropriate standard of proof and the Constitution does not dictate a particular standard, we must prescribe one.   See *Steadman* v. *SEC,* 450 U. S. 91, 95 (1981).   See generally *Blue Chip Stamps* v. *Manor Drug Stores, supra,* at 749 (private cause of action under § 10(b) and Rule 10b–5 must be judicially delimited until Congress acts).   In doing so, we are mindful that a standard of proof "serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision."   *Addington* v. *Texas,* 441 U. S. 418, 423 (1979).   See also *In re Winship,* 397 U. S. 358, 370–371 (1970) (Harlan, J., concurring).   Thus, we have required proof by clear and convincing evidence where particularly important individual interests or rights are at stake. See, *e. g., Santosky* v. *Kramer,* 455 U. S. 745 (1982) (proceeding to terminate parental rights); *Addington* v. *Texas, supra* (involuntary commitment proceeding); *Woodby* v. *INS,* 385 U. S. 276, 285–286 (1966) (deportation).[29]   By contrast, imposition of even severe civil sanctions that do not implicate such interests has been permitted after proof by a

---

[28] See *SEC* v. *Capital Gains Research Bureau, Inc.,* 375 U. S. 180, 194 (1963) (common-law doctrines of fraud which developed around transactions involving tangible items of wealth are ill-suited to the sale of intangibles such as securities); 3 Loss, *supra* n. 10, at 1435.

[29] In *Vance* v. *Terrazas,* 444 U. S. 252, 266 (1980), we held that the Due Process Clause did not require proof beyond a preponderance of the evidence even in an expatriation proceeding.   Cf. *Nishikawa* v. *Dulles,* 356 U. S. 129, 135–136 (1958) (in the absence of evidence of congressional intent to adopt a particular standard of proof, Court imposes clear-and-convincing-evidence standard in expatriation cases).

preponderance of the evidence. See, *e. g.*, *United States* v. *Regan*, 232 U. S. 37, 48–49 (1914) (proof by a preponderance of the evidence suffices in civil suits involving proof of acts that expose a party to a criminal prosecution). Thus, in interpreting a statutory provision in *Steadman* v. *SEC*, *supra*, we upheld use of the preponderance standard in SEC administrative proceedings concerning alleged violations of the antifraud provisions. The sanctions imposed in the proceedings included an order permanently barring an individual from practicing his profession. And in *SEC* v. *C. M. Joiner Leasing Corp.*, 320 U. S., at 355, we held that a preponderance of the evidence suffices to establish fraud under § 17(a) of the 1933 Act.

A preponderance-of-the-evidence standard allows both parties to "share the risk of error in roughly equal fashion." *Addington* v. *Texas*, *supra*, at 423. Any other standard expresses a preference for one side's interests. The balance of interests in this case warrants use of the preponderance standard. On the one hand, the defendants face the risk of opprobrium that may result from a finding of fraudulent conduct, but this risk is identical to that in an action under § 17(a), which is governed by the preponderance-of-the-evidence standard. The interests of defendants in a securities case do not differ qualitatively from the interests of defendants sued for violations of other federal statutes such as the antitrust or civil rights laws, for which proof by a preponderance of the evidence suffices. On the other hand, the interests of plaintiffs in such suits are significant. Defrauded investors are among the very individuals Congress sought to protect in the securities laws. If they prove that it is more likely than not that they were defrauded, they should recover.

We therefore decline to depart from the preponderance-of-the-evidence standard generally applicable in civil actions.[30]

---

[30] The Court of Appeals also noted that the proof of scienter required in fraud cases is often a matter of inference from circumstantial evidence. If

Accordingly, the Court of Appeals' decision as to the appropriate standard of proof is reversed.

## IV

The judgment of the Court of Appeals is affirmed in part and reversed in part, and the cases are otherwise remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE POWELL took no part in the decision of these cases.

---

anything, the difficulty of proving the defendant's state of mind supports a lower standard of proof. In any event, we have noted elsewhere that circumstantial evidence can be more than sufficient. *Michalic* v. *Cleveland Tankers, Inc.*, 364 U. S. 325, 330 (1960). See *TSC Industries, Inc.* v. *Northway, Inc.*, 426 U. S. 438, 463, and n. 24 (1976).