### In re WORLDCOM, INC. SECURITIES LITIGATION

**Alameda County Employees' Retirement Association, et al., Plaintiffs,**

v.

**Bernard J. Ebbers, et al., Defendants.**

**No. 02 Civ.3288(DLC).**

United States District Court, S.D. New York.

March 12, 2004.

William S. Lerach, Darren J. Robbins, Spencer Burkholz, Michael J. Dowd, Randall Baron, Thomas E. Egler, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Melvyn I. Weiss, Steven G. Schulman, Sol Schreiber, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, Patrick J. Coughlin, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, CA, for Plaintiffs.

Jay B. Kasner, Susan L. Saltzstein, Steven J. Kolleeny, Skadden Arps Slate Meagher & Flom LLP, New York, NY, for Defendants Bank of America Corp., Deutsche Bank AG, Goldman Sachs Group, Inc., J.P. Morgan Chase & Co, and Lehman Brothers Holdings Inc.

Martin London, Richard A. Rosen, Brad S. Karp, Eric S. Goldstein, Walter Rieman, Marc Falcone, Joyce S. Huang, Paul Weiss Rifkind Wharton & Garrison LLP, New York, NY, Robert McCaw, Peter K. Vigeland, Wilmer Cutler & Pickering, New York, NY, for Defendant Citigroup Inc.

## OPINION & ORDER

COTE, District Judge.

This Document Relates to:

Plaintiffs in this action have attempted to plead a violation of Section 11 of the Securities Act of 1933 ("Section 11", and the "Securities Act") against corporate parents of underwriters. On October 27, 2003, defendants Bank of America Corp., Deutsche Bank AG, Goldman Sachs Group, Inc., J.P. Morgan Chase & Co., Lehman Brothers Holdings Inc., and Citigroup, Inc. (collectively, the "Holding Company Defendants") moved to dismiss with prejudice pursuant to Rule 12(b)(6), Fed.R.Civ.P., the Section 11 claim asserted against them in the amended complaint in *Alameda County Employees' Retirement Association et al. v. Ebbers, et al.,* No. 03 Civ. 0890 (the "Alameda Complaint" and "Alameda Action"), an action which has been consolidated for pretrial purposes in *In re WorldCom, Inc. Securities Litigation,* No. 02 Civ. 3288(DLC) (S.D.N.Y) *("Securities Litigation")*.[1] The Holding Company Defendants seek dismissal on the ground that they do not fall within any of the five categories of defendants against whom a claim under Section 11 may be asserted. For the reasons set forth below, the Holding Company Defendants' motion is granted.

*Background*

The Alameda Action is one of many individual, as opposed to class, actions ("Individual Actions") filed by the law firm Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss Actions") to assert claims principally against underwriters of WorldCom bond offerings. At a conference on September 12, 2003, defense counsel gave notice of their intent to bring two separate sets of motions to dismiss claims that are common to many Individual Actions.[2] The instant motion came with the

---

1. The procedural history of the *Securities Litigation,* which accompanied the collapse of WorldCom, Inc. ("WorldCom"), is described in previous opinions and will not be repeated here. *See, e.g., In re WorldCom, Inc. Sec. Litig.,* 294 F.Supp.2d 392 (S.D.N.Y.2003) (deciding motions to dismiss the consolidated class action complaint); *In re Worldcom, Inc. Sec. Litig.,* 294 F.Supp.2d 431 (S.D.N.Y.2003) (deciding a motion to dismiss claims in an individual action which had been consolidated for pre-trial purposes with the *Securities Litigation* ).

2. The first tranche of motions to dismiss addressed defendants' claims that there were statute of limitations bars to claims asserted in certain Individual Actions and that a December 2000 WorldCom private placement does not give rise to a Securities Act claim. The first tranche of motions to dismiss were granted in large part. *See In re Worldcom, Inc. Sec. Litig.,* 294 F.Supp.2d 431; *In re WorldCom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2003 WL 22790942 (S.D.N.Y. Nov.25, 2003); *In re Worldcom, Inc. Sec. Li-*

second tranche of those motions to dismiss and addresses the liability of holding companies under Section 11.[3] As instructed by a September 22 Scheduling Order, defendants have brought their motion against one of the Individual Actions and the plaintiffs in the similarly situated Individual Actions have been given an opportunity to submit an amicus brief and will also have an opportunity to show cause why the Opinion issued today does not control any similar motion to dismiss their actions.[4]

The Alameda Action was initially filed on November 6, 2002 in Superior Court of the State of California, County of Los Angeles on behalf of 17 retirement associations, plans, and systems. The action was removed on November 22 and transferred by the Judicial Panel on Multi–District Litigation to this Court on January 30, 2003. The initial complaint included a Section 11 claim for two offerings of WorldCom debt securities: a May 2000 public offering (the "2000 Offering") and a May 2001 public offering (the "2001 Offering").[5] Pursuant to a scheduling order which required certain Individual Actions that wished to file an amended complaint to do so by July 11, on or about that day, the Alameda Plaintiffs served the Alameda Complaint. This amended pleading added certain defendants, including members of the underwriting syndicates that were not included in the initial pleading.

The Alameda Complaint asserts a single claim under Section 11 of the Securities Act. It challenges the accuracy of disclosures in the Registration Statements filed in connection with the 2000 and 2001 Offerings. With respect to these documents, the Alameda Plaintiffs allege that the defendants failed to disclose accurate financial information relating to a number of items, including WorldCom's allegedly improper capitalization of costs, uncollectible receivables and goodwill. The Alameda Complaint states that "[e]ach bank is sued only for bond offerings in which it participated as an underwriter."

The complaint claims that each of the six Holding Company Defendants is liable under Section 11 "through" the acts of a subsidiary that directly underwrote the WorldCom security offerings at issue. For example, it alleges that,

> Defendant *Bank of America Corp.*, is a large integrated financial services institution that *through its controlled subsidiaries* (such as defendant Banc of America Securities LLC (collectively "Bank America")) provides commercial and investment banking services, commercial loans to corporate entities, and *acts as underwriter* in the sale of corporate securities. Bank America was an underwriter of the WorldCom Bonds sold in 5/00 and 5/01.

(emphasis added). The Alameda Complaint makes parallel allegations against three other Holding Company Defendants. With regard to Citigroup, Inc. and J.P.

---

*tig.*, No. 02 Civ. 3288(DLC), 2004 WL 77879 (S.D.N.Y. Jan.20, 2004).

**3.** A February 20, 2004 Opinion addressed additional issues raised by the second tranche of motions to dismiss—preemption under the Securities Litigation Uniform Standards Act, Pub.L. No. 105–353, 112 Stat. 3227 (1998) ("SLUSA") of ten actions filed in Mississippi state court. *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2004 WL 315143 (Feb. 20, 2004).

**4.** No amicus brief was filed in response to this motion.

**5.** The two other portions of the Alameda Complaint have already been dismissed. For the reasons explained in *In re Worldcom, Inc. Sec. Litig.*, 294 F.Supp.2d 431, and *In re Worldcom, Inc. Sec. Litig.*, 2004 WL 77879, the Section 11 claim addressed to a 1998 WorldCom bond offering is time barred, and the Securities Act Section 12(a)(2) claim based on the WorldCom December 2000 private placement does not state a claim.

Morgan Chase & Co., however, the complaint omits the adjective "controlled" as a modifier of the noun subsidiary. Thus, the allegation against these two parent companies is that each "is a large integrated financial services institution that through subsidiaries and divisions. . . ." [6]

### Discussion

The Holding Company Defendants move to dismiss the Section 11 claim against them on the ground that it fails to plead a cause of action since it alleges culpability based on their ownership or control of a subsidiary rather than on their participation in the underwriting. The pleading standard for a Section 11 claim has been described in prior Opinions in the *Securities Litigation*.[7] In brief, all factual allegations in a complaint must be taken as true, and a claim may only be dismissed "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir.2004) (citation omitted).

The starting point for this motion must be the text of Section 11 itself. The canons of statutory construction recently described in *In re WorldCom, Inc. Securities Litigation*, 2004 WL 315143, at *5–6, are incorporated herein and will not be repeated. Section 11 of the Securities Act enumerates five classes against whom such a claim may be asserted. The fifth class, underwriters, is at issue here. Section 11 states in pertinent part

> *[i]n case any part of the registration statement*, when such part became effective, *contained an untrue statement* of a material fact or omitted to state a material fact required to be stated therein or

necessary to make the statements therein not misleading, *any person acquiring such security . . . may sue—*

(1) every person who signed the registration statement;

(2) every person who was a director of . . . the issuer . . . ;

(3) every person who . . . is named in the registration statement as being or about to become a director . . . or partner;

(4) every accountant . . . who has with his consent been named as having prepared or certified any part of the registration statement . . . ;

(5) *every underwriter with respect to such security.*

15 U.S.C. § 77k (emphasis supplied).

Section 11 "was designed to assure compliance with the disclosure provisions of the [Securities] Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381–82, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). In return for that broad-based imposition of liability, Section 11 places an unambiguous limitation on the categories of persons or entities against whom a claim may be brought. Section 11 claims for misleading statements made in a registration statement allow purchasers of a registered security to sue only "certain enumerated parties." *Id.* at 381, 103 S.Ct. 683 (distinguishing between the specific requirements of a Section 11 and Section 10(b) claim); *see also Pinter v. Dahl*, 486 U.S. 622, 650 n. 26, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) ("Section 11(a) explicitly enumerates the

---

**6.** In their opposition to this motion to dismiss, the Alameda Plaintiffs contend that the complaint mistakenly omitted the phrase "its controlled" with respect to the allegations against J.P. Morgan Chase & Co. The plaintiffs, however, do not claim that the phrase

was mistakenly omitted from the claim against Citigroup, Inc.

**7.** *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 294 F.Supp.2d at 406–408 (addressing motions to dismiss class action complaint).

various categories of persons involved in the registration process who are subject to suit under that section, including many who are participants in the activities leading up to the sale."); *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 494 (7th Cir.1986) (dismissal of Section 11 claim because defendants did not fall within an enumerated category of proper defendants); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F.Supp.2d 424, 436 (S.D.N.Y.2000) (same).

> The Securities Act defines an underwriter as any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or *participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking;* but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term 'issuer' shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

15 U.S.C. § 77b(a)(11) (emphasis supplied). The House Report and the Conference Committee Report that accompanied the Securities Act both explained that there must be actual participation in an underwriting by a defendant underwriter. The House Report notes:

> Paragraph (11) sets forth the important definition of "underwriter." The term is defined broadly enough to include not only the ordinary underwriter, who for a commission promises to see that an issue is disposed of at a certain price, but also *includes as an underwriter the person who purchases an issue outright with the idea of then selling that issue to the public.* The definition of underwriter is also broad enough to include two other groups of persons who perform functions, similar in character, in the distribution of a large issue. The first of these groups may be designated as the underwriters of the underwriter, a group who, for a commission, agree to take over pro rata the underwriting risk assumed by the first underwriter. The second group may be termed *participants in the underwriting or outright purchase, who may or may not be formal parties to the underwriting contract, but who are given a certain share or interest therein.*

H.R.Rep. No. 85, 73rd Cong., 1st Sess. 13 (1933) (emphasis supplied). The Conference Committee Report states:

> The substitute amends the definition of underwriter contained in the House bill so as to make clear *that a person merely furnishing an underwriter money to enable him to enter into an underwriting agreement is not an underwriter.* Persons, however, who participate in any underwriting transaction or who have a direct or indirect participation on such a transaction are deemed to be underwriters. *The test is one of participation in the underwriting undertaking rather than that of a mere interest in it.*

Conf. Rep. No. 152, 73rd Cong., 1st Sess. 24 (1933) (emphasis supplied).

An "underwriter" is commonly understood to be a person who "buys securities directly or indirectly from the issuer and resells them to the public, or [ ] performs some act (or acts) that facilitates the issuer's distribution. He participates in the transmission process between the issuer and the public." *Ingenito v. Bermec Corp.*, 441 F.Supp. 525, 536 (S.D.N.Y. 1977). *See also Quinn & Co. v. Securities & Exch. Comm'n*, 452 F.2d 943, 946 (10th

Cir.1971) ("An underwriter is one who purchases stock from the issuer with an intent to resell to the public.").

According to the statutory definition of an underwriter, which includes those who participate directly and indirectly in an underwriting, liability under Section 11 extends to any person who has purchased securities from an issuer for distribution, or who offers or sells securities for an issuer for that purpose, or who participates directly or indirectly in those tasks. As a consequence, the

> definition of a statutory underwriter turns on the relationship of the party and the offering. Professor Loss, a leading commentator on federal securities law, has observed that "[t]he term 'underwriter' is defined not with reference to the particular person's general business but on the basis of his *relationship to the particular offering* .... Any person who performs one of the specified functions in relation to the offering is a statutory underwriter".

*In re Laser Arms Corp. Sec. Litig.*, 794 F.Supp. 475, 484 (S.D.N.Y.1989) (citing L. Loss, *The Fundamentals of Securities Regulation* at 1017 n. 2 (1983)) (emphasis in original).

■ Given this statutory emphasis on an entity's "participation" in the underwriting, courts have determined whether a defendant was an underwriter by analyzing its role in the underwriting process. *See, e.g., Securities and Exchange Commission v. Culpepper*, 270 F.2d 241, 246 (2d Cir.1959). Having a relationship with an issuer or an underwriter, however, does not transform one into an underwriter. For example, a creditor of an issuer is not an underwriter. *Ingenito*, 441 F.Supp. at 536; 15 Broker–Dealer Regulation § 3:6

(June 2003). Market markers that simply purchase shares from other broker-dealers are also not underwriters. *In re Laser Arms Corp. Sec. Litig.*, 794 F.Supp. 475, 484 (S.D.N.Y.1989). Nor are banks that simply buy and sell shares for the investment advisory accounts that they manage. *Zicklin v. Breuer*, 534 F.Supp. 745, 748 (S.D.N.Y.1982)

■ The Alameda Complaint does not state a Section 11 claim against the Holding Company Defendants. It does not allege that they are underwriters because of their participation in the underwriting of either the 2000 or 2001 Offering. Rather, it alleges liability based on these defendants' status as parents of underwriters. There is no basis in the statute or precedent for finding that a parent of an underwriter is a participant, either directly or indirectly, in an underwriting, and the Alameda Plaintiffs have cited none.

Plaintiffs argue that a determination of whether the Holding Company Defendants are liable as underwriters is a fact-specific inquiry that must await a later stage of this litigation and is inappropriate for a motion to dismiss. The cases on which they rely for this argument are inapposite. In *In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910(GEL), 2003 WL 22999478 (S.D.N.Y. Dec.22, 2003), the complaint alleged that the corporate affiliates had played a role in the underwriting. *Id.* at *19. *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 235 F.Supp.2d 549, 598 (S.D.Tex.2002), addressed the adequacy of the pleading of control person liability under Section 15 of the Securities Act.[8]

■ The Alameda Plaintiffs argue in their opposition to this motion that the

---

**8.** In an unreported decision, *In re Enron Corp. Sec. Deriv. & ERISA Litig.*, MDL 1446, No. H–01–3624 (S.D.Tex. Nov. 13, 2003), the court reviewed a complaint's expansive factual allegations regarding the purported underwriters' participation in the securities distributions.

Holding Company Defendants may be liable under Section 11 for their "indirect" participation in an underwriting under either an enterprise or agency theory. There is no mention of an enterprise theory in the Alameda Complaint and there is no legal basis for an "enterprise" theory of liability for a Section 11 claim. "It is a general principal of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods,* 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) (citation omitted).

■ The Alameda Complaint also does not state an agency theory. A party must plead the theories of liability it wishes to pursue. *Peterson v. Ins. Co. of N. Am.,* 40 F.3d 26, 32 n. 3 (2d Cir.1994). Plaintiffs' attempt to cure the pleading deficiencies by describing new allegations in their opposition to this motion to dismiss is unavailing.[9]

Finally, the Alameda Plaintiffs argue that the Holding Company Defendants are liable as control persons under Section 15 of the Securities Act. Section 15 imposes liability upon control persons for acts committed by those under their control who violate Section 11. 77 U.S.C. 77*o; Rombach,* 355 F.3d at 177–78; *In re World-Com, Inc. Sec. Litig.,* 294 F.Supp.2d at 409.

■ While the Alameda Complaint alleges that four of the Holding Company Defendants are underwriters because of their "control" of subsidiaries that were underwriters, the complaint does not explicitly plead a Section 15 claim. Plaintiffs must specify the statute under which they are alleging liability in order to give the defendants fair notice of their claims. While the defendants point out several other obstacles to the pleading of any purported Section 15 claim, it is unnecessary to address those hurdles until the plaintiffs have presented a pleading that explicitly asserts a Section 15 claim.

■ The Alameda Plaintiffs request leave to amend. Under Rule 15, Fed. R.Civ.P., leave to amend shall be "freely given when justice so requires." Generally, a party is allowed to amend its pleading in the absence of a showing of "prejudice or bad faith." *Block v. First Blood Assoc.,* 988 F.2d 344, 350 (2d Cir.1992); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86–87 (2d. Cir.1995). The Alameda Plaintiffs are granted leave to amend their complaint *one* additional time to assert claims against one or more of the Holding Company Defendants.[10]

---

9. Because of the absence of even a proposed amended pleading, it would be inappropriate to speculate on the potential merits of a Section 11 claim against the Holding Company Defendants under an agency theory. Suffice it to say that there are serious questions raised by the plaintiffs' submissions on this motion as to whether they can comply with the law's requirements in pleading a Section 11 claim under an agency theory.

10. The Milberg Weiss Actions have virtually identical complaints. As set forth in a separate Scheduling Order issued today, should the Alameda Plaintiffs amend their complaint to bring claims against the Holding Company Defendants, and should that amendment survive a renewed motion to dismiss, the plaintiffs in the other Milberg Weiss Actions that presently assert claims against the Holding Company Defendants will be given an opportunity to amend their complaints in a similar fashion to state revised claims against their already named defendants. No other amendment addressed to the Holding Company Defendants will be permitted in any other Milberg Weiss Action, however, unless it is brought on the same timetable that will govern the amendment of the Alameda Complaint.

*Conclusion*

The motion of Bank of America Corp., Deutsche Bank AG, Goldman Sachs Group, Inc., J.P. Morgan Chase & Co., Lehman Brothers Holdings Inc., and Citigroup, Inc. to dismiss the Section 11 claim asserted against them in the amended complaint in *Alameda County Employees' Retirement Association et al. v. Ebbers, et al.,* No. 03 Civ. 0890, is granted.

SO ORDERED: