**May 12, 1992**

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, | ) ) ) | APPEAL NO. 91-025 CIVIL ACTION NO. 91-690 |
| Plaintiff/Appellant, | ) ) | |
| vs. | ) ) | OPINION |
| THE TINIAN CASINO GAMING CONTROL COMMISSION, et al., | ) ) ) | |
| Defendants/Appellees. | ) ) | |

Argued and submitted March 30, 1992

Counsel for Plaintiff/Appellant:     James B. Parsons, Esq.
Attorney General's Office
2nd Fl., Admin. Building,
Saipan, MP 96950

Counsel for Defendant/Appellee:     David Wiseman, Esq.
(The Tinian Casino Gaming     P.O. Box 2607
Control Commission)     Saipan, MP 96950

Counsel for Defendant/Appellee     Robert J. O'Connor, Esq.
(The Municipal Treasurer     P.O. Box 1969
of Tinian)     Saipan, MP 96950

BEFORE:    DELA CRUZ, Chief Justice, HILLBLOM and CRUZ, Special
Judges

DELA CRUZ, Chief Justice:

       Plaintiff, the Commonwealth of the Northern Mariana
Islands (the "CNMI Government"), appeals a decision of the Superior
Court which denied most of the relief requested in its complaint

for declaratory relief and monetary damages filed June 24, 1991, against the members of the Tinian Casino Gaming Control Commission (the "Commission"), the Commission's Executive Director, Mr. William B. Nabors, and the Tinian Municipal Treasurer, Mr. David Q. Maratita ("Maratita"). A hearing was held before the Superior Court on August 29th and 30th, 1991. The trial court issued its written decision on September 6, 1991. The CNMI Government timely appealed.

## I.

## FACTS

In July of 1989, persons residing in the Municipality of Tinian and Aguiguan, acting pursuant to Article IX, Section 1(b) of the Commonwealth Constitution, presented for approval by the Office of the Attorney General of the CNMI a petition which proposed a local initiative (the "Initiative") which, if passed, would enact "The Tinian Casino Gaming Control Act of 1989" (hereafter referred to as the "Act").[1] The Act, if enacted, would legalize casino gambling in the Second Senatorial District and create both the Tinian Casino Gaming Control Commission (the "Commission") and the

---

[1] Article IX, Section 1(b) of the Constitution requires initiative petitions to be filed with the attorney general "for certification that the requirements of section 1(a) have been met." Section 1(a) of Article IX states:

An initiative petition shall contain the full text of the proposed law. If the petition proposes a general law for the Commonwealth, the petition shall be signed by at least twenty percent of the persons qualified to vote in the Commonwealth. If the petition proposes a local law that affects only one senatorial district, the petition shall be signed by at least twenty percent of the persons from the senatorial district who are qualified to vote.

Office of the Tinian Municipal Treasurer.[2]

The provisions of the Act are comprehensive and contain the "full text of the proposed law," totalling 106 pages. The Office of the Attorney General, after review, certified the Initiative on August 1, 1989, for placement on the election ballot. At the general election held November 4, 1989, voters within the Second Senatorial District overwhelmingly passed the Initiative by a vote of 520 votes for, and 92 votes against. By its terms, the Act became effective January 1, 1990.

Pursuant to Part II, Section 5 of the Act, on February 15, 1990, the Mayor of Tinian, James M. Mendiola, nominated John U. Hofschneider (Chairman), Jose P. Cruz (Vice-Chairman), Lino B. Lizama, Joseph M. Mendiola and Ramon Dela Cruz to serve on the Commission.[3] These nominations were unanimously approved by the Tinian Municipal Council on March 30, 1990.

Sometime in early 1990, the Commission promulgated emergency regulations, which adopted an application form for casino license applicants and established a fee of $2,000 to obtain the form. Between June and September of 1990, 16 entities each paid the requisite $2,000 to secure an application form from the Commission. By November 15, 1990, seven applicants had each paid

---

[2] The Office of the Tinian Municipal Treasurer was created pursuant to the Act:

There is hereby created the Office of the Tinian Municipal Treasurer within the Office of the Mayor of Tinian and Aguiguan, whose duties shall be established by regulations issued by the Mayor which shall include the duty to collect and receive all monies due under this Act.

(Act, Part VI, Section 50(4)).

[3] Ramon Dela Cruz was not a named defendant in the complaint. Presumably, Mr. Dela Cruz was replaced by Commissioner Mr. Reynaldo M. Cing, a defendant/appellee in this action.

138

a $200,000 non-refundable application fee as required under Part VI, Section 50(2) of the Act. These fees brought the total sum collected by the Commission to $1,432,000.

On October 18, 1990, the Commission passed its budget for Fiscal Year 1991. As of that point in time, no funds had been expended. The Tinian Municipal Council subsequently approved the Commission's budget for Fiscal Year 1991 on January 30, 1991 by enacting Local Appropriation Ordinance No. 3-01.

On February 1, 1991, the Commonwealth Legislature enacted P.L. 7-21, which states in pertinent part:

> Section 404. <u>Management of Funds</u>. . . and further, all funds in the amount of $1,432,000 plus all interest derived therefrom deposited with the Department of Finance by the Municipal Treasurer, Municipal Council, the [Commission], or the Mayor of the Second Senatorial District which were collected through the [Commission] pursuant to the [Act] shall be transferred and deposited forthwith into an account established for this purpose by the Tinian Municipal Treasurer.

On or about July 27, 1990, the Mayor of Tinian[4] appointed David Q. Maratita to serve as the Tinian Municipal Treasurer. On February 1, 1991 -- the same day the Legislature passed P.L. 7-21 -- the Mayor of Tinian issued proposed regulations empowering the Tinian Municipal Treasurer to perform the duties authorized the Treasurer under the Act.

Also, on February 1, 1991 -- presumably pursuant to Section 404 of P.L 7-21, quoted above -- the collected sum of $1,432,000 was transferred and deposited in a new account.

---

[4] The Mayor of Tinian and Aguiguan is referred to herein as the Mayor of Tinian.

139

Appellant CNMI Government notes in its brief that this bank account was "opened by the CNMI Director of Finance, Eloy Inos, and the Tinian Municipal Treasurer, defendant David Q. Maratita," and both gentlemen "had signature power on this account." The Commission is less exact on this point, stating only that "[o]n or about February 1, 1991, the funds were transferred to the Tinian Municipal Treasurer." The Commission does reveal that on or about September 26, 1991 -- three months after the CNMI commenced this action -- the Tinian Municipal Treasurer opened another account "dedicated to funding the Commission." Appellant CNMI Government further notes that at some time after February 1, 1991, the Tinian Municipal Treasurer removed $1 million from the jointly-established account to one or more accounts over which the Commonwealth Director of Finance had no authority.

By memorandum dated February 6, 1991, the Attorney General advised the Tinian Municipal Treasurer that funds collected under the Act could not be expended legally without first complying with 1 CMC Section 1408. That statute provides:

> Revenue Derived From Local Revenue Laws. All revenues derived from local revenue laws shall be collected pursuant to procedures adopted by the Director of Finance and shall be deposited in the General Fund in a special account for appropriation in local appropriation laws enacted by the legislative delegation from which district the revenues are derived. A decision by the legislature to approve or reject a proposed expenditure preempts a decision on the same expenditure for the same fiscal year by the legislative delegation.

On February 7, 1991, the four legislators who comprise the legislative delegation from the Second Senatorial District

unanimously passed Second Senatorial District Resolution No. 01-91, which resolved that "the Tinian Joint Legislative Delegation . . . deems it necessary to appropriate to and does hereby concur and endorse Local Appropriation Ordinance No. 3-01 . . ." Appellees then, "on the advice of counsel and in consultation with the Joint Legislative Delegation," decided that a Commonwealth legislative local appropriation bill was not necessary in order to expend the funds which had been collected.[5]

On February 22, 1991, the Tinian Municipal Treasurer began disbursing funds to the Commission.

Shortly thereafter, on March 1, 1991, the Commission requested each of the seven casino license applicants to pay an additional $100,000. The Commission states this additional fee was necessary "to cover the costs of investigation and administrative costs of the Commission." Each applicant paid the additional sum.

The Commission adopted a supplemental budget on April 19, 1991, which was approved by the Tinian Municipal Council by Ordinance No. 3-02.[6] The Commission alludes in its brief that the Tinian Municipal Treasurer Maratita has also expended funds pursuant to the Commission's supplemental budget.

In May and July of 1991, the Commission published in the Commonwealth Register a comprehensive set of proposed regulations

---

[5] One CMC Section 1407 provides that Local Appropriation or Revenue Bills shall be introduced in the Commonwealth House of Representatives pursuant to the House's official rules (with some minor format alterations), and specify the local matter involved.

[6] It is unclear whether the Tinian Joint Legislative Delegation adopted another resolution approving this Ordinance.

141

relating to casino licensing and applicants, and Commission hearings. These regulations were formally adopted by the Commission in June and September of 1991. On June 24, 1991, the CNMI Government filed its complaint.

## II.

### ISSUES PRESENTED

The paramount issue presented by the CNMI Government for our review is constitutional in scope: whether the provisions of the Act take precedence over Commonwealth-wide laws, namely the laws enacted by the Commonwealth Legislature.[7] The CNMI Government also presents several ancillary issues contending that certain Commonwealth-wide laws prevail over many provisions of the Act which allegedly contradict those laws. Appellee, Tinian Municipal Treasurer, raises the additional issue concerning the lawfulness of his expenditure of money from the Commission's account.

Our ruling on the basic constitutional issue, however, obviates the need for us to determine these subsidiary issues. Such issues shall be redetermined by the Superior Court upon remand, in light of our constitutional ruling herein.

## III.

### STANDARD OF REVIEW

The central issue presented by this litigation concerns the

---

[7]     The Superior Court framed the central issue as "the status and relationship of the provisions of the Initiative vis-a-vis several provisions of the laws of the Commonwealth."

primacy of applicable Commonwealth-wide law over a local gambling initiative expressly permitted under the Commonwealth Constitution and is an issue reviewable de novo. <u>Commonwealth v. Peters</u>, Appeal No. 90-026 (N.M.I. Jan. 8, 1991). Constitutional issues inherently are questions of law, and, therefore, are subject to de novo review. <u>Dilutaoch v. C & S Concrete Block Products</u>, Appeal No. 90-016 (N.M.I. Feb. 1, 1991); <u>Ada v. Sablan</u>, Appeal No. 90-006 (N.M.I. Nov. 16, 1990).

## IV.

## ANALYSIS

We begin our analysis by noting that the Act is a "local" initiative, in the sense that it affects only the Second Senatorial District, notwithstanding the fact that it was passed pursuant to Article XXI's specific constitutional permission given a senatorial district to establish gambling by local initiative. It was enacted pursuant to the local initiative procedures set forth in Article IX of the CNMI Constitution.

Article IX, Section 1 of the Constitution provides for two types of initiatives: those which are local in scope and those which are Commonwealth-wide in coverage. Article XXI of the Constitution specifically empowers a senatorial district to establish gambling by local initiative.

In analyzing the constitutional issue presented for our review, we note that the Act, with its complex body of regulations and requirements, must be considered against the Commonwealth-wide

143

interests upon which its provisions may impact. These Commonwealth-wide interests are embodied in the CNMI Constitution and in the general laws of the Commonwealth as enacted by the Commonwealth Legislature or through Commonwealth-wide initiative.

The structure and functional relationship of our Commonwealth government to and with the respective municipal governments in each senatorial district is set forth in our Constitution. There is a symbiotic relationship between Commonwealth-wide laws and the local laws of each senatorial district, including those enacted by local initiatives. Each set of laws should be able to co-exist harmoniously, without either doing violence to the other. The unity of the entire Commonwealth must be a paramount consideration, but our Constitution nevertheless allows for a certain degree of flexibility permitting each of the Commonwealth's three senatorial districts to enact local laws pertaining only to that district. Local laws and local initiatives allow each district the ability to maintain and to retain its own unique characteristics and promote its own special aspirations.

It is important, however, that each district, in enacting local laws by municipal ordinance, district delegation legislation, or local initiative, ensure that local laws enacted do not encroach upon or adversely impact upon those interests relating to the entire Commonwealth. Certain areas of legislation are inherently Commonwealth-wide in nature and scope, particularly those which pertain to essential government functions that promote the

144

interests of all citizens of the Commonwealth. These areas of the law are embodied generally in our Constitution, and manifested in the general laws enacted by the Commonwealth Legislature or through Commonwealth-wide initiative. All Commonwealth citizens have a vested interest in the general application of these "Commonwealth-wide" laws throughout the Commonwealth.

If each senatorial district were to enact local laws that unilaterally carve out special exceptions from the application of Commonwealth-wide laws, the unifying thread that holds the Commonwealth together would be weakened and ultimately destroyed. To ensure that such disastrous effect would not occur, Article II, Section 6 of our Constitution empowers the Commonwealth Legislature to define "the local matters that may be the subject of [local] laws . . ."

Acting pursuant to this grant of authority, the Commonwealth Legislature enacted the Local Law Act of 1983. (P.L. 3-77; codified at 1 CMC Section 1401, et seq.) The Local Law Act enumerated several areas which properly may be the subject of "local bills." See 1 CMC Section 1402(a). Insofar as gambling is concerned, however, the Local Law Act states only that a Local Bill may include "[g]ambling prohibition and regulation, so long as such regulations are in addition to Commonwealth regulations." 1 CMC Section 1402(a)(8).

Notwithstanding the Local Law Act enacted in 1983, Article XXI of our Constitution, which was adopted in 1985, provides a unique exception to the Legislature's general power to

145

define the subject of local laws. That constitutional provision expressly permits gambling to be "established" by a senatorial district through local initiative. The people of the second senatorial district have acted upon this special grant of authority by voting to enact the Initiative at issue.

■ We believe that the main issue before us is not so much the question of which law is paramount -- a Commonwealth-wide law or a local gambling initiative. Rather, the issue, as we see it, is whether certain provisions of the Act, and the regulations promulgated thereunder, run afoul of the constitutional scheme pertaining to the interrelationship between Commonwealth-wide laws and local initiatives as envisioned by the framers. Stated differently, the question is not so much which category of law prevails as between the Act and Commonwealth-wide laws, but whether the provisions of the Act are permissible under the Constitution.

Because of the fundamental interest in preserving the unity of the Commonwealth, there is a need to balance the local interest to be promoted by the Act and the interest of the entire Commonwealth in enacting laws of general application to the Commonwealth. An important goal should be to preserve as much as possible the ability of each senatorial district to enact local laws, without establishing a "special enclave" in order to exclude itself from the reach of Commonwealth-wide laws. In order to achieve this goal, a balancing test should be applied so that both local and Commonwealth-wide interests are properly considered.

The Superior Court below applied a balancing test to weigh the issues raised. The Superior Court's test involved four factors:

1. There is a presumption, derived from Articles IX and XXI of the Commonwealth Constitution, that the provisions of the Act are valid.

2. Any provision of the Act which conflicts with the U.S. or Commonwealth Constitutions must fall.

3. Any provision of the Act must be reasonably related to the establishment of gaming in the senatorial district.

4. Any provision of the Act which attempts to require use of, or to utilize, or to prohibit the use of branches or agencies of the Commonwealth Government will be scrutinized and rejected if the result is to effect the normal and necessary operations of the Commonwealth Government.

We find two flaws with the Superior Court's test. First, it balances the provisions of the Act only against the U.S. and Commonwealth Constitutions, but not the Commonwealth-wide laws. Second, the requirement that the Act's provisions must merely be 'reasonably related' to the establishment of gambling gives more emphasis to the provisions of the Act itself, rather than to the right to establish gambling.

We instead are of the opinion that the proper balancing test to apply in this case involves the following three factors.

First, there is a presumption that the provisions of a local initiative concerning gambling which is duly enacted pursuant to Articles IX and XXI of the Commonwealth Constitution are valid

147

unless any provision of the local initiative conflicts with a provision of the U.S. Constitution, the Commonwealth Constitution, or a Commonwealth-wide law. The opponent of a local gambling initiative has the initial burden to show by clear and convincing evidence which provisions of the local gambling initiative are inconsistent and in conflict with which constitutional provisions or Commonwealth-wide laws, and why.

Second, if any provision of the local gambling initiative conflicts with a provision of the U.S. Constitution, the Commonwealth Constitution, or a Commonwealth-wide law, that provision must fall, unless, with respect to a Commonwealth-wide law, the application of the Commonwealth-wide law would frustrate the establishment of gambling in a senatorial district.

Third, once it clearly is shown that there is a conflict between a Commonwealth-wide law and a local gambling initiative, then the Commonwealth-wide law prevails, unless the proponent of the gambling initiative demonstrates by clear and convincing proof that the application of a Commonwealth-wide law would itself violate Article XXI of the Commonwealth Constitution. In this case, the appellees must show that a Commonwealth-wide law, if it were to supersede a provision of the Act, would unduly and unreasonably interfere with the second senatorial district's constitutional right to effectively establish gambling.[8]

---

[8]    Under the test we enunciate herein, the fourth factor of the test applied by the Superior Court is reduced to a basis for a showing whether the local gambling initiative impinges upon a Commonwealth-wide law.

148

In making a balancing determination for this particular case, the trial court must first ascertain the Commonwealth-wide interest(s) at stake and the interests of applying the general, Commonwealth-wide law uniformly and weigh it against the adverse effect on the establishment of gambling as provided in Article XXI, as opposed to its adverse effect on a specific provision of the Act itself.[9]

We adopt the "clear and convincing" standard of proof in this civil case because it implicates constitutional concerns, Santosky v. Kramer, 455 U.S. 743, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Sabrosky v. Denver Dept. of Social Services, 781 P.2d 106 (Colo. App. 1989), and because we find that "particularly important individual interests or rights are at stake." Grogan v. Garner, __ U.S. __, 111 S.Ct. 654, 659 (1991), quoting, Herman & MacLean v. Huddleston, 459 U.S. 375, 389-90, 103 S.Ct. 683, 691, 74 L.Ed.2d 548 (1983).

> Clear and convincing evidence may be defined as an intermediate standard of proof greater than a preponderance of the evidence, but less than proof beyond a reasonable doubt required in criminal cases. It is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established, and requires the existence of a fact be highly probable.

Masaki v. General Motors Corporation, 780 P.2d 566, 574 (Hawaii 1989).

---

[9] The term "establish," has been defined as "to found, to create, to regulate." Black's Law Dictionary, 5th ed. (West 1979).

Certainly the "right" of the people of Tinian to establish gambling is of special significance because it derives directly from our Constitution. It is undisputed that the voters of Tinian, in an effort to advance their own local economy, exercised their constitutional right in passing the Act. On the other hand, the application throughout the Commonwealth of our Constitution and Commonwealth-wide laws, for the reasons noted earlier, is an important constitutional concern. For these reasons, we find the clear and convincing standard to be the proper measure of proof that the parties must meet on remand.

V.

OTHER CONSIDERATIONS ON REMAND

Much time has lapsed since the people of Tinian passed the Act. The Commission and the Tinian Municipal Treasurer have worked diligently since then in their effort to establish gambling on Tinian. During that time, the Commission has engaged in rule-making and began its investigations of potential casino licensees. Some of those actions are now completed, and some are still in progress. So as not to further delay the implementation of the establishment of gambling in the second senatorial district, the actions and efforts already taken or underway by appellees should be reviewed by the Superior Court in light of the balancing test we have set forth herein.

An issue which merits our specific attention is whether the Local Law Act of 1983 (P.L. 3-77; 1 CMC Section 1401, et seq.)

150

applies to the Act. This particular issue apparently precipitated this lawsuit. In his memorandum addressed to Maratita dated February 6, 1991, the Attorney General warned:

> I believe, . . . you will comply with the law, and in particular 1 CMC Section 1408, prior to expending any of the $1,432,000 dollar [sic] which was transferred to the Office of the Tinian Municipal Treasurer by the Commonwealth Department of Finance. However, I must advise you that if either you or members of the [Commission], or the Commission Executive Secretary, or any Commission employee expend any of the $1,432,000 dollars prior to there existing an appropriation of these funds by the Tinian Legislative Delegation my Office will have no choice but to immediately institute legal proceedings against any and all parties engaging such [sic] unauthorized and improper conduct.

Maratita replied by memorandum dated February 11, 1991, which stated, in part, "[w]hile the Tinian Municipal Council passed its appropriation, absence of an appropriation still at this point in time by the Tinian Delegation in compliance with 1 CMC Section 1408 will delay any disbursement of funds from the Office of the Tinian Municipal Treasurer."[10]

Five days earlier on February 7, 1991, however, the four legislators from the Second Senatorial District already had passed by unanimous vote Second Senatorial District Resolution No. 01-91, which resolved that "the Tinian Joint Legislative Delegation . . . deems it necessary to appropriate to and does hereby concur and endorse Local Appropriation Ordinance No. 3-01 . . . ." Apparently, neither the District Delegation Resolution No. 01-91 nor Local

---

[10] See page 5, supra, for a quotation of 1 CMC Section 1408.

Appropriation Ordinance No. 3-01 were presented to the Commonwealth House of Representatives as a Local Appropriation or Revenue Bill in accordance with 1 CMC Sections 1407 or 1408. Appellees state they found it unnecessary to comply with the Local Law Act in order to expend the funds which the Commission had collected, based "on the advice of counsel and in consultation with the Joint Legislative Delegation." Therefore, on February 22, 1991, the Tinian Municipal Treasurer began disbursing funds to the Commission.[11]

On appeal, appellees do not dispute that the Tinian Legislative Delegation's Resolution No. 01-91 does not comport with the requirements of 1 CMC Section 1408 or other provisions of the Local Law Act. Instead, they contend that the Local Law Act simply is not applicable to the provisions of the Act. Maratita concludes in his brief that the Act "enjoys a special status different from any other local law now in existence." Apparently, the trial court applied a similar analysis. In his decision, the trial judge wrote:

> Since the Constitution provides the mechanism for the Act and is independent of the local law provisions of the Constitution and the Code, the initiative process and the law promulgated by that process is not subordinate to the general law of the Commonwealth. (citation omitted.)

As we have more fully explained earlier, we disagree with

---

[11] By letter dated June 5, 1991, the Attorney General requested that Maratita comply with 1 CMC Section 1408 and deposit the additional $700,000 which the Commission had collected into the general fund. The Attorney General warned that failure to do so "can subject [Maratita] and those who act on [his] behalf to civil, and potential criminal penalties."

the trial court's conclusion the Act simply is "not subordinate" to Commonwealth-wide law. It may or may not be subordinate; the balancing test discussed above must be applied to determine this issue. Hence, the specific issue of whether the Act "is independent of the local law provisions of the Constitution" and the provisions of the Local Law Act will be for the Superior Court's determination on remand in light of the test we have enunciated herein.

In the event the Superior Court, after applying the balancing test enunciated herein, determines that certain provisions of the Act, or the regulations promulgated thereunder, violate a Commonwealth-wide law, then those provisions of the Act or regulations shall be stricken. We recognize, however, that should the Superior Court strike certain provisions from the Act or regulations, those actions by appellees which have already been taken pursuant to those provisions or regulation, and those actions still pending or in progress, still must be addressed.

Those actions which appellees had already taken and completed, prior to the date of this opinion, pursuant to any provisions of the Act or regulations which might hereafter be stricken by the Superior Court, should be allowed to stand so long as those actions were taken in good faith and in accordance with the provisions of the Act or regulations. See, e.g., Hicksville v. Blakeslee, 134 N.E. 445, 22 A.L.R. 119 (Ohio 1921).[12] It shall be

---

[12]   The court in Hicksville v. Blakeslee held that where the members of a municipal council who, in good faith, but in violation of a state statute, enacted an ordinance relating to the sale of municipal bonds -- and the bonds failed -- the councilmen could not be held personally and individually liable for sums paid

incumbent upon the Commonwealth Government to prove by clear and convincing evidence that an appellee took actions in bad faith or in blatant disregard of law, which, in this case, includes not only Commonwealth-wide laws but also the provisions of the Act.[13]

Certain actions by appellees may still be pending or in progress, but not completed, as of the date of this opinion. If the Superior Court, after applying this court's balancing test, determines that such actions are being taken pursuant to a provision of the Act or a regulation which must be stricken, the Superior Court may order that such actions be altered so as to begin to conform with, and to meet the requirements of, applicable law so long as the completed portion of an action in progress was taken by appellees in good faith and in accordance with a provision of the Act or a regulation promulgated thereunder. Any remedy which may be fashioned by the Superior Court should have prospective application.[14]

VI.

CONCLUSION

Because the balancing test we have set forth herein is the appropriate test to apply in determining whether the provisions

---

out under the supposed authority of the void ordinance.

[13] A review of the record before us reveals nothing which indicates that any of the defendant/appellees were acting in bad faith or with clear disregard of the law.

[14] There certainly is nothing to prevent the parties from agreeing amongst themselves that the passage of time simply has rendered prior actions by the Commission, Maratita or others beyond a practical remedy.

of the Act and the regulations being challenged are in line with our Constitution, we now **VACATE** the judgment of the Superior Court and **REMAND** the case for a new hearing consistent with this opinion. Because of the urgency to have the matter resolved, we instruct the Superior Court to give the case priority status in its civil calendar.

Entered this _12th_ day of May, 1992.

_____
Jose S. Dela Cruz
Chief Justice

_____
Larry Hillblom
Special Judge

_____
Benjamin Cruz
Special Judge