**Henry T. ENDO, et al., Plaintiffs–Appellants,**

v.

**ARTHUR ANDERSEN & COMPANY, S.C., Defendant–Appellee.**

**No. 98–1642.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1998.

Decided Jan. 4, 1999.

Arthur T. Susman (argued), Susman, Buehler & Watkins, Chicago, IL; Terrence Buehler, Chicago, IL, for Plaintiffs–Appellants.

John M. George, Jr. (argued), Sidley & Austin, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and BAUER and MANION, Circuit Judges.

POSNER, Chief Judge.

In March 1987, Fruit of the Loom, Inc., the clothing manufacturer, made an initial public offering of common stock and other securities. Purchasers of these securities who lost money (the share price was $9 at the time of offering and a year later, when the suit was filed, was $6) banded together in a class action against the issuer, its underwriters, and others, including both its then-current auditor, Arthur Young & Co. (now Ernst & Young, and that's what we'll call it), and its former auditor, Arthur Andersen. The suit charged the defendants with misrepresentations in the registration statements and prospectuses accompanying the IPO, in violation of federal and state securities laws. All the defendants except Andersen settled, but the district judge granted summary judgment for Andersen and the plaintiffs have appealed. The issue on appeal is novel, narrow, esoteric, but potentially important to accountants, to their clients, and to investors. It has to do with the republication by an issuer of securities of audit reports made by the issuer's former auditors. Specifically, we must decide whether a former auditor must condition his consent to republication on the issuer's republishing verbatim all the footnotes that had appeared in the financial statements that the former auditor had approved. Although the plaintiffs seek to ground this duty in various provisions of federal and state law, we shall not have to discuss any provision other than section 11(a)(4) of the Securities Act of 1933, 15 U.S.C. § 77k(a)(4). This section makes an accountant liable for an untrue statement of fact (or misleading omission) "which purports to have been ... certified by him" in a registration statement. If Andersen didn't violate this provision, even more clearly did it not violate the other provisions on which the plaintiffs rely, which require greater proof of culpability. *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490, 496–97 (7th Cir.1986).

Fruit of the Loom had hired Andersen to audit its financial statements for 1985. Andersen did this and reported to Fruit of the Loom's management that the financial statements were complete and accurate so far as Andersen could determine through the use of sound auditing methodology. The statements contain a footnote, reviewed and approved by Andersen as part of the audit, to the effect that FOL is contesting in the Tax Court $105 million in deficiencies assessed by the Internal Revenue Service for a period in the 1970s. The note includes a warning that "the cash payment to the Internal Revenue Service, including interest, may exceed the amount of alleged deficiencies." This warning does not appear in the note on tax liabilities in FOL's 1986 financial statements, though other ominous warnings, not included in the previous statements, relating to tax liabilities for the 1980s, do appear. The 1986 statements were audited by Ernst & Young, which had replaced Andersen as FOL's auditor.

In the public documents accompanying the 1987 IPO, Fruit of the Loom was required to disclose its financial results for 1985 as well as 1986. 17 C.F.R. § 210.3–01(a). It asked Andersen to consent to the republication of the report of the 1985 audit. Sound accounting practice not challenged by Andersen required it to read the offering documents and check with its successor auditor, Ernst & Young, to make sure that Ernst & Young hadn't discovered anything to falsify the 1985 financial statements that Andersen had certified. SAS (Statements on Auditing Standards) No. 37, 1 American Institute of Certified Public Accountants, *AICPA Professional Standards* AU § 711.11 (CCH 1996). Andersen duly obtained from Ernst & Young letters certifying that Ernst & Young had discovered nothing that warranted changing the 1985 financial statements. It then consented to the republication of its audit report in the offering documents. The plaintiffs argue that investors would think that Andersen had changed its mind about the danger of the IRS's mulcting Fruit of the Loom for more than $105 million. In fact the IRS did mulct it for more and the plaintiffs argue that this

was one cause of the trading losses that they sustained and seek to recoup in this suit.

So far as Andersen's compliance with applicable auditing standards is concerned, there is no issue. It did exactly what those standards require of a former auditor asked to consent to the republication of its audit report: inquire whether any new information had come to light that showed that the report had not been accurate. If investors were misled, it was not because they mistakenly relied on Andersen to exercise reasonable care to discover such information; Andersen used all the requisite care, and discovered no such information—there was none to discover. The question, rather, is whether by permitting FOL to omit from the IPO documents the warning sentence from the footnote to the 1985 financial statements, Andersen misled investors into thinking that the tax-liability picture had brightened—that FOL's *maximum* tax liability for tax years during the 1970s was $105 million.

The key to answering this question lies in the difference between historical and predictive information in a former auditor's audit report. The text, as distinct from the footnotes, of the 1985 financial statements of Fruit of the Loom that Andersen approved shows the revenues and costs that the company actually experienced that year. This was "history" so far as the successor auditor was concerned. Because Fruit of the Loom was required in its IPO documentation to report its 1985 financial results, and because information obtained since Andersen had audited those results might show that they were inaccurate, it was important to FOL and to investors that Andersen, which unlike Ernst & Young had investigated the 1985 results, check to make sure they still were accurate. That is what it did, by checking with Ernst & Young, which had audited the next year's statements and so would know whether anything had happened during that year to require revision of the previous year's statements. The footnotes, however, or at least the footnotes at issue here (the tax note and one other note, on potential environmental liabilities, that is unnecessary to discuss separately), talk about the future—

specifically, about what might happen as a result of the unresolved litigation in the Tax Court. As to that, Andersen had no continuing responsibility arising from its role as a *former* auditor. The current auditor would know much more about the future.

To see this, imagine that FOL, in order to show what a steady performer it had been, decided to publish in its IPO documentation its financial statements for the last 100 years (not that it has been in business for that long, but we are putting a hypothetical case). And suppose it asked all its former auditors to consent to the republication of their audit reports. And suppose that the audit report for 1897 contained a footnote in which the auditor expressed concern that global warming in the twenty-first century might have an adverse impact on FOL's profits. It would be absurd to require the former auditor, as a condition of consenting to republication of its audit report on FOL's 1897 financial results, to insist that the global-warming footnote be republished. Obviously the current auditor would know a lot more about the global-warming threat to FOL's profits than its predecessor of a century before. No rational investor would be interested in that ancient warning.

This case is less dramatic, but the principle is the same. The investor is interested in the *former* auditor's continued confidence in the figures which that auditor had approved, but in the *current* auditor's opinion regarding contingencies that, not yet having materialized, are not reflected in the historical data. The investor who reads the documentation accompanying FOL's IPO sees a column for the company's 1985 financial results, a column for its 1986 results, a set of footnotes dealing with contingent liabilities not reflected in the columns, and notations that Andersen audited the 1985 results and continues to stand by them and that Ernst & Young audited the 1986 results. The investor will assume that Andersen is standing by the numbers in the column for 1985, not standing by the prophecies in the footnotes, which are about today speaking of tomorrow rather than about today speaking of yesterday.

The footnotes are, it is true, a part of the financial statements. 17 C.F.R. § 210.1–01(b). But remember that an accountant's liability for misleading representations in a registration statement is limited to the portion of any financial statements "which purports to have been prepared or certified by him." 15 U.S.C. § 77k(a)(4); see *Herman & MacLean v. Huddleston*, 459 U.S. 375, 386 n. 22, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); cf. *United States v. Arthur Young & Co.*, 465 U.S. 805, 811, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984). Andersen did not purport to certify the footnotes to Fruit of the Loom's 1986 financial statements, though it did purport to certify that, on the basis of information received from Ernst & Young, it had no reason to revise the 1985 financial results shown in the 1986 statements. Nor would any reasonable investor have thought otherwise.

We are reinforced in this conclusion by several additional considerations. One is a desire to avoid disrupting what, so far as we are aware, is a common and (from absence of reported cases or other published discussion) heretofore unquestioned practice of revising the footnotes in the former auditor's report on the basis of new information audited by the current auditor. Another is a disinclination to make registration statements and prospectuses even more bulky and confusing than they are, to the detriment of investors as well as issuers. If the plaintiffs are right, Fruit of the Loom was required to include in the offering documents two footnotes on contingent tax liabilities: one containing Andersen's evaluation of those liabilities as of 1986, when it conducted the audit of FOL's 1985 financial statements, and the other Ernst & Young's evaluation as of 1987, when Ernst & Young audited FOL's 1986 financial statements. The careful reader, juxtaposing the two notes, would notice that the second was more optimistic about the company's tax liabilities for the 1970s. But what would he infer? That Andersen in 1986 knew more about what the future would hold than Ernst & Young in 1987? That is hardly plausible.

Still another, and we think conclusive reason, for our conclusion that Andersen is not responsible for the footnotes is that Ernst & Young is. The investor does not expect the same financial data and estimates to be audited by two separate audit companies. He expects the current data, including the current estimates of contingent liabilities, to be audited by the current auditor, and data for periods prior to the hiring of this auditor to be audited by a former auditor. Ernst & Young did not audit the 1985 financials; Andersen did. Andersen did not audit the 1986 predictions; Ernst & Young did.

AFFIRMED.