**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Wayne F. GORSEK, Lyndell Parks, P. Brenden Gebben, Defendants.**

No. 99–3072.

United States District Court,
C.D. Illinois,
Springfield Division.

April 20, 2001.

Robert B. Kaplan, John P. Winsbro, Mark Kreitman, Bridget Moore, Securities & Exchange Commission, Washington, DC, for Plaintiff.

Phillip W. Offill, Krage & Janvey, LLP, Dallas, TX, Wm. F. Trapp, Brown, Hay & Stephens, Springfield, IL, for Defendant Wayne F. Gorsek.

Daniel P. Schuering, John E. Kerley, Schuering & Kerley, Springfield, IL, for Defendant Lyndell Parks.

Hugh J. Graham, April Troemper, Graham & Graham, Springfield, IL, for Defendant P. Brenden Gebben.

### ORDER

SCOTT, District Judge.

This matter is before the Court on the Plaintiff's Motion for Partial Summary Judgment (d/e 104), Defendant Parks' Motion for Summary Judgment (d/e 101), and Defendant Gebben's Motion for Summary Judgment (d/e 97). The Securities and Exchange Commission alleges that Defendants Gorsek, Parks, and Gebben violated Section 17(b) of the Securities Act of 1933, 15 U.S.C. § 77q(b), Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10(b)(5) thereunder, 17 C.F.R. § 240.10b–5. The Defendants deny any wrongdoing and argue that the Court should dismiss all counts against them. The Court has considered all evidence properly before it including the motions, responses, replies, and oral arguments.[1] For the reasons set forth below, Plaintiff's Motion for Summary Judgment (d/e 104) is granted in part and denied in part. Defendant Parks' Motion for Summary Judgment (d/e 101) and Defendant Gebben's Motion for Summary Judgment (d/e 97) are each denied.

### I. FACTS

It is undisputed that Strategic Investment Advisory was a Springfield-based

---

1. In ruling on these motions, the Court only considered the admissions by the parties, depositions, and the materials furnished by Strategic Investment Advisory (SA) (relating to the period when Gorsek and Parks owned SA) to the Plaintiff, pursuant to subpoena. The Court agrees with Defendants' contention that other third party documents were not adequately authenticated to be considered.

company which was owned jointly by Defendants Gorsek and Parks during the times alleged in the Complaint. *Plaintiff's Statement of Facts Not Reasonably in Dispute ¶ 2* (admitted by Defendants Gorsek, Parks, and Gebben). SA contracted with its issuer clients to provide services, typically including writing "Profile Reports" and "Equity Update Reports," distributing those materials by fax and mail to SA's proprietary database, and arranging conference calls between (typically) a corporate officer of the issuer-client and Defendant Gorsek. *Plaintiff's Statement of Facts Not Reasonably in Dispute ¶ 3* (admitted by Defendants Gorsek, Parks, and Gebben). The profiles promoted the stock of the issuer and were published and disseminated in interstate commerce without disclosing the amount of compensation or the type of compensation paid by the issuer to SA. In exchange, the contracts provided that SA was to be paid a flat monthly fee, or a fee plus stock if the issuer's stock price increased, or a stated number of the issuer's shares of stock. *Gorsek and Parks Amended Answers to Complaint.* While SA primarily sought to place brokers or other professionals on its fax and mail lists, individual investors also were placed on such lists and received information from SA. *Gorsek Inv. Tr. 291; Parks Inv. Tr. 42, 51.* In addition, free wire service fax numbers were placed on the top of the fax list.

*Gebben Inv. Tr. 258.* Both Defendants Gorsek and Parks regularly answered phone calls from investors or brokers who called to request information or to inquire about a company profiled by SA. *Gorsek Inv. Tr. 65; Parks Inv. Tr. 37–38.* Defendant Gorsek, also, held conference calls where he interviewed a corporate executive, recorded the conversation, invited people to participate passively, and then mailed the tape to interested parties. *Gorsek Inv. Tr. 361.* Finally, Defendant Gorsek wrote an article for Research Magazine in which he described and recommended some small-cap health care stocks. *Rebecca McReynolds Deposition 28–31.* The profiles listed officers of SA, including a Director of Research or Research Assistant. *Plaintiff's Exhibit 33.* Profiles also contained a summary or conclusion which appeared to be based on SA's analysis of the stock profiled. *E.G.* "The surge in used car sales makes FFAC an attractive growth investment." *See Plaintiff's Exhibit 33.* Nowhere did the Profiles state that SA was simply repackaging the issuer company's data without any independent analysis by SA.

Essentially a letter from Gorsek to Richard Tucker at First Fidelity Acceptance Corporation (FFAC), outlining the services SA provided to FFAC, summarizes the distribution of SA materials.[2] *See also Plaintiff's Exhibit 24* (invoice to Madera from SA, listing fax broadcasts), *Plaintiff's*

---

**2.** The letter states that SA performed the following services on behalf of FFAC: "(1) created and produced initial research reports, (2) delivered 4,500 of the research reports to FFAC (it is [SA's] understanding that [FFAC] sent these to shareholders), (3) mailed approximately 4,000 of the research reports to people calling for information about FFAC and to people on our client list, (4) faxed FFAC company news to the financial news wire agencies and to our clients, (5) planned and conducted a conference call with Richard Tucker, Wayne Gorsek, and over 40 brokers, (6) had audio cassette of the conference call

duplicated and have sent out nearly 1,000 of these cassettes to interested brokers, (7) have made nearly 1,000 cold calls to additional brokers and analysts in order to interest them with FFAC, (8) conducted fax broadcasts and follow-up phone calls to SA newsletter subscribers regarding FFAC, (9) receive and handle investor relations phone calls from FFAC shareholders (this occurs on a daily basis), (10) SA is preparing a new updated research report on FFAC, and (11) a second conference call with Richard Tucker, Wayne Gorsek, and brokers has been scheduled for December 20, 1995." *Plaintiff's Exhibit 47.*

*Exhibit 25* (invoice to Madera from SA, listing phone expenses, mail and AirEx expenses, fax broadcasts, and conference call expenses), *Plaintiff's Exhibit 42* (showing the last page of profile with a request to be taken off fax list), *Plaintiff's Exhibit 46* (invoice to Environmental Chemical from SA, listing mail, mailer (5000 clients), and AirEx expenses).

At the bottom of the Profile, SA stated, at least prior to 1995, the following:

> This report is for information purposes only and based on public data from sources we consider to be reliable, but is not guaranteed as to accuracy and does not purport to be complete. This report is not to be construed as a representation or as an offer or the solicitation of an offer by us to sell or buy any security. The information in this report is not intended to be used as the primary basis of investment decisions, and because of individual client objectives it should not be construed as advice designed to meet the particular investment needs of any investor. Any opinions expressed in this report are subject to change without notice. Strategic Investment Advisory, Inc., receives compensation from [name of issuer] for providing shareholder and broker communication. This firm and/or its directors, officers, employees or others associated with it may have positions in or effect transactions in the security or its derivatives. Annual report, 10K and other information upon request.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. Pro. 56(c); *see Ruiz–Rivera v. Moyer,* 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist,* 833 F.2d 639 (7th Cir.1987).

## III. ANALYSIS

 The Securities Act of 1933 was intended to provide investors with full disclosure of material information concerning public offerings of securities in commerce, to protect investors against fraud and, through the imposition of specified civil liabilities, to promote ethical standards of honesty and fair dealing; the 1934 Act was intended also to protect investors against manipulation of stock prices through regulation of transactions upon securities exchanges and in over-the-counter markets. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194–95, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

## IV. SECTION 17(b)

 In relevant part, Section 17(b) states:

It shall be unlawful for any person, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, to publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof.

15 U.S.C. § 77q(b). Section 17(b) was designed to protect the public from publications that " 'purport to give an unbiased opinion but which opinions in reality are bought and paid for.' " *U.S. v. Amick*, 439 F.2d 351, 365 (7th Cir.1971)(citing Committee on Interstate and Foreign Commerce. H.R.REP. No. 85, at 24 (1933)). The Securities Acts were enacted to (among other things) ensure that adequate and true information is placed before the investor and to protect honest enterprise against the competition afforded by dishonest securities offered to the public through crooked promotion. *United States v. Naftalin*, 441 U.S. 768, 775–76, 99 S.Ct. 2077, 60 L.Ed.2d 624 (1979)(quoting the Senate Report, S.REP. No. 47, at 1 (1933)). In order to violate Section 17(b), a person must (1) publish or otherwise circulate (using a means of interstate commerce), (2) a notice or type of communication (which describes a security), (3) for consideration received

(past, currently, or prospectively, directly or indirectly), (4) without full disclosure of the consideration received and the amount. The Court finds that Plaintiff is entitled to summary judgment on its claim that Defendants Wayne Gorsek and Lyndell Parks violated Section 17(b); however, there remains an issue of fact as to whether Defendant Brenden Gebben violated this section.

The first requirement of Section 17(b) is not in dispute as to Gorsek and Parks; as owners of SA they clearly published and circulated materials in interstate commerce.

Second, an abundance of evidence demonstrates that SA produced a "notice, circular, advertisement, newspaper, article, letter, investment service, or communication which ... describes [a] security...." Specifically, SA produced "profiles" on behalf of its issuer-clients. These profiles recommended the stock of the issuer and appeared to be an independent analysis by SA. Gorsek testified that he wrote research reports regularly until summer of 1995, when he began training Gebben to take over writing responsibilities; Gorsek continued to supervise Gebben. *Gorsek Inv. Tr. 41, 256–7.* In his investigative deposition, Gorsek discussed two profiles he prepared, one was a profile for Environmental Chemical (Plaintiff's exhibit 30), and the second was a profile for Deprenyl (Plaintiff's exhibit 39). He described the information contained in each report and the source of information for the reports. *Gorsek Inv. Tr. 73–76, 336.* In addition, Gorsek or SA produced several profiles as a response to the SEC's request or pursuant to subpoena.[3] *See Plaintiff's Exhibits 33, 39, and 42.*

---

**3.** The Seventh Circuit has held that it is not in error "to admit as evidence documents that Defendants themselves possess and produced in response to Plaintiff's requests for production of documents. *United States v. Brown*, 688 F.2d 1112 (7th Cir.1982). In addition to being self-authenticating, the documents produced by Defendants contain Defendants' own statements and are admissions, not hearsay. Under Federal Rule of Evidence 801(d)(2), admissions by party opponents are not hearsay." *Architectural Iron Workers Lo-*

■ Third, the Court finds there is no factual dispute that Defendants Gorsek and Parks received consideration for their services outlined above. As previously noted, the Defendants frequently billed their issuer-clients with itemized bills, listing the services provided and the required amounts of money and/or stock due to SA. *See Gorsek Inv. Tr. 119–120* (explaining payment arrangements with some companies). Producing and circulating the profiles was a significant part of the bargained-for services. SA was regularly paid with a combination of cash and stock. *Plaintiff's Exhibits 11* (consulting agreement between SA and Environmental Chemical, outlining services SA will preform and the compensation arrangement that includes both monthly cash fee and stock transfers), *21* (consulting agreement between SA and Stone Media Corporation, which is very similar to the Environmental Chemical agreement), and *25* (letter from SA to Madera outlining overdue payments, including stocks that needed to be issued). Gorsek and Parks, as co-owners of SA, paid themselves by splitting all amounts that remained after paying the overhead. *Plaintiff's Statement of Facts Not Reasonably in Dispute ¶¶ 25, 26, 27; Gorsek Inv. Tr. 5; Parks Inv. Tr. 30; Parks' Response to Commission's Request for Admissions ¶ 24; Gorsek's Response to Commission's Request for Admissions ¶¶ 21–24.*

Both Gorsek and Parks argue that they did not receive consideration as understood in *S.E.C. v. Wall Street Publishing Institute,* 851 F.2d 365 (D.C.Cir.1988). The Defendants' reliance on this case is misplaced, however, as it concerns an exchange not readily identifiable as consideration (free text of article exchanged for the publication of such article along with promise to buy advertising). The Court finds that there is no genuine issue of material fact but that Defendants Gorsek and Parks received consideration in the form of stocks and cash for profiles circulated by them in interstate commerce.

■ There remains an issue of fact, however, as to whether Defendant Gebben received consideration directly for his work in distributing materials which violated Section 17(b). He was not an owner of SA, and he was paid a salary through SA. The facts are in dispute as to whether he knew that bonus money was tied directly to distribution by him of the profiles and other materials.

■ The final element of Section 17(b) involves the Defendants' failure to disclose the receipt of consideration and the amount of consideration. The most basic principle of statutory interpretation requires giving words in a statute their common, ordinary meaning. *Williams v. Taylor,* 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). Here Section 17(b) calls for the disclosure of the receipt of compensation *and* the amount. It is undisputed that the Defendants did not disclose the amount of compensation in their written or verbal communications concerning their issuer-clients. *Plaintiff's Statement of Facts Not Reasonably in Dispute ¶ 60; Parks' Inv. Tr. 94; Parks' Response to Commission's Request for Admissions ¶ 15; Gorsek's Response to Commission's Request for Admissions ¶ 17.* Prior to 1995, SA published "Profiles" with the following disclaimer:

This report is for information purposes only and based on public data from sources we consider to be reliable, but is not guaranteed as to accuracy and does not purport to be complete. This report is not to be construed as a representation or as an offer or the solicitation of an offer by us to sell or buy any security. The information in this report is not

*cal No. 63 Welfare Fund v. United Contractors,* 46 F.Supp.2d 769, 772 (N.D.Ill.1999).

intended to be used as the primary basis of investment decisions, and because of individual client objectives it should not be construed as advice designed to meet the particular investment needs of any investor. Any opinions expressed in this report are subject to change without notice. Strategic Investment Advisory, Inc., receives compensation from [name of issuer] for providing shareholder and broker communication. This firm and/or its directors, officers, employees or others associated with it may have positions in or effect transactions in the security or its derivatives. Annual report, 10K and other information upon request.

*Gorsek Inv. Tr. 84–85, 87.* After 1995, the disclaimer no longer stated that SA received compensation from the issuer and merely stated, "Strategic Investment Advisory, Inc., receives compensation for providing shareholder and broker communication." *Plaintiff's Exhibit 42* (final page of Madera profile). The Court finds that the disclosure used by SA, both before and after 1995, is insufficient under Rule 17(b). Both fail, as previously noted, to list the amount of compensation; both also fail to disclose the type of consideration (*e.g.* stock, cash, or combination of cash and stock). Therefore, the Court finds there is no genuine issue of material fact disputing that Defendants Gorsek and Parks violated Section 17(b).

As a specific example, the Court finds that SA contracted with Environmental Chemical to prepare "research profiles summarizing the characteristics and merits of ECG, prepare additional updates to reports ..., distribute these reports and updates via mail and fax broadcast ..., handle incoming calls related to distribution of said reports, cold calling brokers, market makers, etc. to enhance liquidity." *Plaintiff's Exhibit 11; Gorsek Inv. Tr. 111.* Gorsek prepared the Environmental Chemical Profile and published it (by mailing and faxing it) in January 1995. *Gorsek Inv. Tr. 88, 121–22.* The profile did not disclose the manner of SA's expected payment or the amount of the payment for publishing and distributing the profiles. *Gorsek Inv. Tr. 84–85, 87.* In return, Environmental Chemical contracted to pay SA a cash monthly fee, 80,000 shares of stock (vesting over a period of time), and if "ECG's stock attains and averages a $2.50 or greater stock price for five days before or after [set date] ECG will issue an additional 5,000 shares to SA. If ECG's stock attains a stock price of $4.00 or greater ..., SA will receive an additional 5,000 shares. If ECG's stock price attains $10.00 per share ..., SA will receive an additional 10,000 shares." *Plaintiff's Exhibit 11; Gorsek Inv. Tr. 119–20.* The Court finds that SA's activities with Environmental Chemical alone are sufficient to constitute a violation of Section 17(b) by Gorsek and Parks.

## V. SECTION 10(b) and RULE 10(b)(5)

Section 10(b) provides that: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement, ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." Rule 10(b)(5) states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities ex-

change, (a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) to engage in any act practice or course of business which operates or would operate as a fraud or deceit upon any person, [all three] in connection with the purchase or sale of any security.

■■■■ Congress intended Section 10(b) to be a "catchall antifraud provision." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Thus, "section 10(b) must be read flexibly, not technically and restrictively." *Superintendent of Ins. v. Bankers Life and Casualty Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). Section 10(b) liability rests with any person who meets the required elements, regardless of his role in the activity (i.e. lawyer, accountant, banker, etc). *Anixter v. Home–Stake Production Co.*, 77 F.3d 1215, 1224 (10th Cir.1996). To establish liability under Section 10(b) and Rule 10(b)(5), a plaintiff must prove: (1) that a defendant made a material misrepresentation (or a material omission if the defendant had a duty to speak); (2) that the defendant made the statement or omission with scienter; and (3) that the conduct occurred in connection with the purchase or sale of a security. *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450 (2nd Cir.1996).

**A. Materiality**

■■■■ Materiality is defined as that which "so alters the 'total mix' of information available to the investor that it has the potential to affect the [investment] decision." *LHLC Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928, 931 (7th Cir.1988). *See also Basic Inc. v. Levinson*, 485 U.S. 224, 231, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988);

*Rowe v. Maremont Corp.*, 850 F.2d 1226, 1232–33 (7th Cir.1988). The SEC alleges at least five material omissions to the profiles and updates created, printed, and distributed by the Defendants: (1) that SA was paid by the issuers featured in the particular profile or update, (2) that SA was compensated by the issuer for writing the profiles and updates on that company, (3) that SA was paid in part with stock for its services, (4) that SA (in some situations) would receive additional stock compensation if the stock price reached a pre-set level, and (5) that SA merely reprinted the projections and target prices received from its issuer-clients and did no independent research. The Court finds that, in the context of the facts of this case, at least the last four of these omissions fulfill Section 10(b)'s first requirement of materiality.

SA's contract with Environmental Chemical, as noted above, calls for SA to prepare profiles and additional updates, distribute these reports and updates via mail and fax broadcast, handle incoming calls, and cold call brokers and market makers. *Plaintiff's Exhibit 11.* In return, Environmental Chemical was to pay SA a cash monthly fee, shares of stock (vesting over a period of time), and additional shares of stock vesting as the stock price increased. *Plaintiff's Exhibit 11.* Defendant Gorsek and Parks admitted they were aware of agreements with some clients, whereby SA would receive extra compensation if stock prices reached certain pre-set levels. *Plaintiff's Statement of Facts Not Reasonably in Dispute, ¶ 27. See also Defendant Gorsek's Response to Plaintiff's First Request for Admissions ¶ 24.*

However, SA's disclaimer on the Environmental Chemical Profile is precisely the same as the one noted above by the Court, and it only vaguely refers to compensation

received by SA. The disclaimer did not tell the reader of the profile that it (SA) stood to gain if the price of the stock went up. The disclaimer did not tell the reader of the profile that SA had done no independent research on the company and that all of its statements were just rehashed company material. Defendants Gorsek and Parks, through their attorneys, argued at oral argument that their disclosure said: "We're bought and paid for." Unfortunately for them, it did not. Later disclaimers (post 1995) were even more vague and as a result insufficient to protect SA from Section 17(b) and now Section 10(b) liability.

■■■■■■ The Defendants argue they had no duty to speak and that such a duty (independent of the securities laws themselves) is necessary to establish a violation of Section 10(b) in a case of an omission. While it is true that if the Defendants remained silent, there would need to be a showing that they had a duty to speak (*e.g.* fiduciary duty) before they could be found liable. However, the Defendants did not remain silent. By publishing profiles, updates, and magazine articles, the Defendants incurred an obligation to disclose fully their relationship with the issuers they were promoting. *See Ackerman v. Schwartz*, 947 F.2d 841, 848 (7th Cir.1991)("[U]nder Rule 10(b)(5), moreover, the lack of an independent duty does not excuse a material lie. A subject of a tender offer or merger bid has no duty to issue a press release, but if it chooses to speak it must tell the truth about material issues. Federal law requires persons to tell the truth about material facts once they commence speaking, but with rare exceptions does not oblige them to start speaking."). "A person undertaking to furnish information which is misleading because of a failure to disclose a material fact is a primary participant [in a violation of section 10(b) and Rule 10(b)(5)]." *S.E.C. v. Jakubowski*, 912 F.Supp. 1073, 1081 n. 6

(N.D.Ill.1996). The Court finds that the Defendants, once they began speaking, had a duty to do so truthfully, and the omissions previously discussed left the profiles, updates, and other communications by SA misleading at best.

■■■ Finally, the Defendants argue that the SEC has not proven investor reliance as would be necessary under Rule 10(b)(5). However, the case law in the Seventh Circuit is clear. Reliance is presumed in omission cases under Section 10(b) and Rule 10(b)(5). *See Wright v. Heizer Corp.*, 560 F.2d 236 (7th Cir.1977) ("Reliance is presumed if the omitted information would have been viewed by the reasonable investor as having significantly altered the total mix of information made available."). *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1232–33, n. 4 (7th Cir. 1988)("[I]n ... transactions involving only material omissions, a plaintiff need not prove reliance; the omission's materiality and the defendant's duty to disclose supply the requisite causation."); *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1044, 1048 (7th Cir.1977)(citing *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972))("With materiality established, reliance in an omissions case is presumed.").

The Court finds that as a matter of law, SA's omissions from its profiles and updates [that SA was paid by the issuer featured for the particular profile written, was paid in part with stock for its services, and (in some situations) would receive additional stock compensation if the stock price reached a preset level, and did no independent research but merely regurgitated the company's promotional material] are material in the context of the facts of this case. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)("The sellers had the right to know that the

defendants were in a position to gain financially from their sales . . . ."); *SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 198, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963)("The suppression of information material to an evaluation of the disinterestedness of investment advice 'operated as a deceit on purchasers.' "); *United States v. Amick*, 439 F.2d 351, 365 (1971)("The substantial interest of the investing public in knowing whether an apparently objective statement in the press concerning a security is motivated by promise of payment is obvious.").

### B. Scienter / Recklessness

Scienter on the part of the Defendants is a clear requirement for a Section 10(b) and Rule 10(b)(5) violation. *See Aaron v. SEC*, 446 U.S. 680, 691, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980)(extending the *Hochfelder* conclusion that scienter is an element to civil cases with SEC as plaintiff); *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1238 (7th Cir.1988). The Seventh Circuit has found that scienter may be shown through reckless conduct. *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1044 (7th Cir.1977). "Reckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1045 (7th Cir.1977)(quoting *Franke v. Midwestern Oklahoma Development Authority*, 428 F.Supp. 719 (W.D.Okl.1976)). This definition of recklessness is equivalent to intentional, wilful fraud. *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1045 (7th Cir.1977).

In this case, Defendants Gorsek and Parks' extensive activities in promoting its issuer-clients in the profiles, articles, conference calls, mailings and in making projections and offering opinions on the stock profiled which would naturally lead the reader to believe SA had made an independent analysis of the stock, without full disclosure, establish Gorsek and Parks' scienter. It was at best extremely reckless to fail to disclose one's own potential gain when promoting an issuer-company. Gorsek and Parks were aware that they were paid in both cash and stock and that some contracts awarded additional stock if stock prices rose. Yet in none of the publication disclaimers was either of these material facts disclosed. Defendants Gorsek and Parks were co-owners and leaders of this company. Defendant Gorsek took primary responsibility for the writing, and Defendant Parks primarily handled the financial affairs. Both Defendants acted extremely recklessly in ignoring the obvious conflict and failure to disclose.

An issue of fact exists, however, as to whether Defendant Gebben knew the contracted for terms that SA expected to gain from the issuer in exchange for the profiles and internet postings. He claims he did not know the contract terms; Plaintiff contends he knew enough. For that reason, only, the Court will deny the SEC's motion for summary judgment as to him on the Section 10(b) claim.

The Court finds that there is no genuine issue of fact contesting the conclusion that Defendants Gorsek and Parks acted intentionally or with extreme recklessness in omitting the four facts that the Court found material in the previous section.

### C. In Connection With

The final requirement for Section 10(b) and Rule 10(b)(5) liability is that the material omission made with scienter must

be made in connection with the purchase or sale of a security. The meaning of this phrase in SEC actions "remains as broad and flexible as is necessary to accomplish the statute's purpose of protecting investors [among others]." *S.E.C. v. Jakubowski,* 912 F.Supp. 1073, 1085 (N.D.Ill.1996). Essentially the Defendants' actions must merely "touch" the sale of securities or in some way influence an investment decision. *See S.E.C. v. Jakubowski,* 150 F.3d 675, 680 (7th Cir.1998); *S.E.C. v. Jakubowski,* 912 F.Supp. 1073, 1085 (N.D.Ill.1996)(quoting *Superintendent of Ins. v. Bankers Life and Casualty Co.,* 404 U.S. 6, 12–13, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971)).

The Court finds that this requirement is amply met. Gorsek and Parks routinely mailed their profiles and updates to potential stock purchasers, brokers, stock holders, or anyone who expressed a desire to be added to their mailing lists. The Court can come to no other reasonable conclusion than to find that these Defendants' actions were attempting to influence investment decisions and were, therefore, done in connection with the sale of securities.

Defendant Parks' Motion for Summary Judgment is denied. He argues that the SEC must prove there was a conspiracy. However, the SEC has not alleged conspiracy, and it is not an element of Sections 17(b) or 10(b) liability. In addition, Parks argues that the SEC has not proven scienter. As stated above, the Court finds that Parks' level of involvement in the company and in particular with its financial affairs, combined with his activities on the phone amount to a violation of Section 17(b), Section 10(b), and Rule 10(b)(5). Finally, Defendant Parks argues there is insufficient evidence to find him liable under Section 17(b), particularly arguing that he did not publish anything and always disclosed the financial relationship between SA and the issuer companies. The Court has found,

however, that Parks admitted he communicated with individuals on the phone and at no time disclosed the amount of compensation received by SA. For these reasons, Parks' Motion for Summary Judgment is denied.

Defendant Gebben's Motion for Summary Judgment is denied also. Defendant Gebben primarily argues that the SEC has proffered insufficient evidence to avoid a summary judgment finding. The Court has denied the SEC's Motion for Summary Judgment as to Defendant Gebben because genuine issues of material fact exist. For these reasons, Gebben's Motion for Summary Judgment is denied also.

Finally, Defendant Gorsek's Motion in Limine is denied in part as moot. Gorsek sought to exclude or limit the testimony of the Plaintiff's expert, Steven B. Lord, from both the evidence at trial and from the evidence considered by the Court on the summary judgment motions. The SEC did not rely on Lord for its motion for summary judgment, and the Court did not consider the expert's report in deciding the SEC's motion and the Defendants' motions. Thus, the Court denies Gorsek's Motion in Limine as moot, as it relates to the summary judgment motions. The Court reserves ruling on Gorsek's motion as it relates to any trial testimony on any Counts not affected by the summary judgment rulings.

THEREFORE, the Court ALLOWS IN PART the SEC's Motion for Partial Summary Judgment (d/e 104), as it relates to Defendants Gorsek and Parks for Section 17(b) liability and as it relates to Defendants Gorsek and Parks for Section 10(b) and Rule 10(b)(5) liability. SEC's Motion for Summary Judgment is DENIED as to Defendant Gebben. Defendant Parks' Motion for Summary Judgment (d/e 101) is denied. Defendant Gebben's Motion for Summary Judgment (d/e 97) is denied.

Defendant Gorsek's Motion in Limine (d/e 92) is denied in part, as it relates to the summary judgment motions, and reserved as it relates to Plaintiff's expert's trial testimony. The Court reserves ruling on any injunctive relief or disgorgement remedy sought.