**In re: SKECHERS U.S.A., INC. SECURITIES LITIGATION,**

**Municipal Employees' Retirement System of Michigan, on behalf of itself and all others similarly situated, Plaintiff–Appellant,**

v.

**Skechers USA, Inc.; Robert Greenberg; Michael Greenberg; Jeffrey Greenberg; David Weinberg, Defendants–Appellees.**

No. 05–55980.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2007.

Filed April 10, 2008.

Tor Gronborg, Lerach Coughlin, et al., LLP, San Diego, CA, Sanford Svetcov,

Coughlin Stoia Geller Rudman & Robbins, LLP, San Francisco, CA, for Plaintiff–Appellant.

Seth Alben Aronson, Daniel P. Petrocelli, David Hurwitz, O'Melveny & Myers, LLP, Los Angeles, CA, for Defendants–Appellees.

Before: FARRIS and PAEZ, Circuit Judges, and BLOCK,* District Judge.

## MEMORANDUM **

Municipal Employees Retirement System of Michigan and other plaintiffs appeal the district court's dismissal of their First Amended Complaint against Skechers USA, Inc. and four of its principal officers alleging securities fraud in violation of sections 10(b) and 20(a) of the 1934 Securities Exchange Act, 15 U.S.C. §§ 78j, 78t, and 17 C.F.R. § 240.10b–5. They allege that defendants Michael Greenberg, Robert Greenberg, and David Weinberg committed fraud when they made optimistic earnings projections in press releases and conference calls on April 24 and July 24, 2002, knowing that the company had been experiencing a decrease in demand.

Considering the plaintiffs' allegations in their totality, *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. ——, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007), we conclude that the plaintiffs have failed to "state with particularity facts giving rise to a strong inference that the defendant acted with" knowledge that their statements were false, as required by the PSLRA. 15 U.S.C. § 78u–4(b)(2).

In arguing that the named defendants knew that their April 24 and July 24, 2002 statements were false, the plaintiffs rely in large part on a confidential witness's account of a February 2002 company sales meeting. Allegations that the officers knew that sales were down in February do not strongly support an inference that the officers' statements were fraudulent when made two months later in April. *See Tellabs*, 127 S.Ct. at 2511 ("[O]missions and ambiguities count against inferring scienter."). To the contrary, the record contains statements that suggest that the company's sales were experiencing an upswing in March. *See id.* at 2509 (finding that the court must consider "plausible opposing inferences" that are unfavorable to the plaintiff). For example, in the April conference call, M. Greenberg noted that orders had trended up in March and that retailers had been "placing orders closer to the season."

The only link that plaintiffs provide between the February meeting and the April statements is an allegation by two confidential witnesses that in these intervening weeks "each of the defendants was receiving weekly updated projections of booked and expected sales and knew that Skechers faced a sharp decline in [second half] sales." The complaint, however, fails to describe with any detail the contents of these interim reports, who drafted them, or how the confidential witnesses were in a position to know that the defendants received the alleged reports. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir.1999); *see also In re Daou Systems, Inc. Sec. Litig.*, 411 F.3d

* The Honorable Frederic Block, Senior United States District Judge for the Eastern District of New York, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1006, 1022 (9th Cir.2005) (general allegations that defendants' receipt of unspecified weekly or monthly reports are insufficient).

The plaintiffs also alleged that Skechers persuaded customers to take early delivery of merchandise, resulting in a shift of approximately $20 million in sales from the third quarter to the second quarter of 2002. Plaintiffs argue that the shift was intended to artificially inflate second-quarter sales to meet expectations, and to give a falsely optimistic impression of demand for Skechers' product.

We agree with the First Circuit's observation that "[t]here is nothing inherently improper in pressing for sales to be made earlier than in the normal course." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 202 (1st Cir.1999). Here, the shifted sales were not necessary to meet second-quarter expectations because Skechers would have exceeded those expectations with or without them: Sketchers exceeded consensus estimates by $0.11 per share; in announcing those results, defendant M. Greenberg estimated that "$0.06 per share was due to [Skechers'] ability to surpass our internal goals and that $0.05 per share was related to [the] retail request for the early delivery of [Skechers'] products." Nothing in the complaint calls that estimate into question.

In any event, M. Greenberg explained that the increase attributable to the shifted sales would come out of third-quarter expectations. Thus, the market was aware that the increase in second-quarter sales came at the expense of third-quarter sales.

Finally, the plaintiffs also fail to demonstrate that the defendants' sales of stock between May 3 and June 24, 2002 were "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *In re Apple Computer*

*Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989). The defendants had sold large amounts of stock during the same two months of the previous year. Further, the quantity of stock sold does not support the inference of scienter. The Greenbergs sold between 7% and 17% of their total holdings, while Weinberg sold 42% of his much smaller stake in the company. This court has not generally inferred scienter from sales in this range. *See Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir.2001) (finding sales of 10% to 17% were not suspicious); *In re Silicon Graphics*, 183 F.3d at 987 (finding sales of 43.6% of an individual's shares were not suspicious where the sales represented an "insignificant portion of the allegedly suspicious sales").

Considering the totality of the facts alleged in the FAC, the plaintiffs have failed to meet their burden under the PSLRA.

**AFFIRMED.**

PAEZ, Circuit Judge, dissenting:

I respectfully dissent. I would reverse the district court's dismissal of Plaintiffs' consolidated complaint and remand for further proceedings. Considering the totality of Plaintiffs' allegations as required by *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. ——, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007), I would hold that they have met their burden under the heightened pleading requirements of the Private Securities Litigation Reform Act (PSLRA) to allege a strong inference of scienter. Although this is a high standard, it is not an impossible one.

When reviewing a complaint alleging fraud under section 10(b), "courts must consider the complaint in its entirety" to determine "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether

any individual allegation, scrutinized in isolation, meets that standard." *Tellabs,* 127 S.Ct. at 2509. *Tellabs* requires that overall, "[t]he inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling ... at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 2510. Thus, while we must also consider "plausible opposing inferences" that are unfavorable to Plaintiffs, to satisfy their burden under the PSLRA, Plaintiffs "must plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference." *Id.* at 2509, 2513.

Plaintiffs allege a complex pattern of fraud whereby Defendants knowingly made false statements regarding future sales when they already knew that sales were declining, misrepresented the true cause of a temporary rise in sales that was the product of an alleged cover-up by Defendants prior to the class period, and cushioned their losses by taking advantage of artificially inflated stock prices with carefully timed insider trading during the class period. In support of these allegations, Plaintiffs allege particularized facts, which, taken in their totality, give rise to a strong inference of scienter.

Plaintiffs allege that Defendant M. Greenberg represented that retailers were placing their 2002 orders with Skechers three to four months in advance. This statement was independently corroborated by Confidential Witness 5, a regional sales manager. Taken together with additional allegations from other confidential witnesses that Defendants knew in January and February 2002 that sales had declined significantly and were continuing to do so for the upcoming second, third, and fourth quarters, these allegations support a plausible inference that Defendants knew in April and July 2002 that their statements predicting increased profits were false. *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.,* 380 F.3d 1226, 1231 (9th Cir.2004) (concluding that factual allegations describing specific information about declines in sales and its availability to defendants during the relevant time period was sufficient to support an inference of scienter when considered with remaining allegations in complaint). Taking into account plausible competing inferences, they are no more compelling than the inference of scienter supported by Plaintiffs' entire complaint.

Plaintiffs also allege that Defendants knew that statements they made about $20 million in sales shifted from the third quarter into the second quarter were false because they implied that retailers, rather than Skechers, had requested the early sales. Although, as the majority observes, that Skechers requested early sales is not, by itself, necessarily improper, Plaintiffs allege that these statements falsely portrayed increased demand for Skechers products when demand·was in fact decreasing. Whether the shifted sales were necessary to meet second-quarter expectations does not affect the misleading nature of the statements, nor does M. Greenberg's explanation that the increase attributable to the shifted sales would come out of third-quarter expectations. Plaintiffs alleged facts demonstrating that Defendants falsely stated that the $20 million in early shipments were requested by retailers and concealed the fact that the early sales were initiated by Skechers. I disagree with the majority's characterization of these allegations; at a minimum, the statements were misleading to investors because they overstated demand for Skechers' products.

In support of these allegations, the complaint includes detailed information from six confidential witnesses who corroborate one another, describing how managers act-

ing at the direction of M. and R. Greenberg were instructed to offer their customers extended payment terms to encourage acceptance of early delivery and identifying specific customers that were offered these terms. Two of these confidential witnesses, both Distribution Supervisors, confirmed that neither of them had been contacted by customers requesting early delivery, which directly contradicts the allegedly false statements made by M. Greenberg, R. Greenberg, and D. Weinberg that retail requests were responsible for the boost in second quarter sales. The complaint includes additional allegations from another confidential witness, a Territory Sales Manager, confirming that only Defendants had the authority to extend payment terms. Taken together, these allegations support a strong inference of scienter.

Finally, Plaintiffs allege that Defendants engaged in insider trading during the class period, when the Greenbergs sold between 7% and 17% of their total holdings and Weinberg sold 42% of his smaller stake in the company. While this court has not generally inferred scienter from sales in this range, as Plaintiffs allege, the timing of the sales is suspicious because the sales took place during the period when Skechers' stock price hit its peak. *See In re Daou Systems Sec. Litig.*, 411 F.3d 1006, 1024 (9th Cir.2005); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 987 (9th Cir.1999); *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir.2001). As the Supreme Court noted in *Tellabs*, 127 S.Ct. at 2511, allegations that defendants engaged in insider trading are not necessary to establish scienter, but may contribute to our evaluation of whether a strong inference of scienter is supported by the entirety of the complaint. Here, these allegations of insider trading contribute to the overall picture that Defendants had actual knowledge of the true state of Skechers' financial health at the time they made allegedly false statements. They thereby strengthen the inference of scienter drawn from the complaint taken as a whole.

Plaintiffs are not required to allege facts amounting to a "smoking gun," but may rely upon circumstantial evidence to allege fraud. In light of the detailed allegations, it is hard to imagine what more Plaintiffs could have alleged to raise a strong inference that Defendants knew their statements were false when made. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 391 n. 30, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). *See also Tellabs*, 127 S.Ct. at 2510, 2513. Considering all allegations in the complaint collectively, the alleged facts demonstrate that Skechers is a relatively small, family-run corporation, where the principal officers are aware of the state of the corporation's financial health and are involved in all aspects of the business. Particularly when viewed in this context, Plaintiffs' allegations support a strong inference that Defendants knew their statements were false when made. *See Oracle*, 380 F.3d at 1234. With regard to the allegations attributed to confidential witnesses, although Plaintiffs may not have alleged facts giving a complete description of their identities, they have provided sufficient facts to demonstrate that the witnesses were in a position to have knowledge supporting their allegations. Considering the complaint holistically, and taking all allegations as true, these allegations are sufficient to provide a strong inference of falsity and scienter. *See Tellabs*, 127 S.Ct. at 2510.

Because I would conclude that Plaintiffs have met their pleading burden under the PSLRA to allege a strong inference of scienter, I would reverse the district court's dismissal of their complaint and remand for further proceedings.